504 A.2d 854

**COMMONWEALTH of Pennsylvania**

v.

**Lynn STEHLEY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1985.

Filed Jan. 31, 1986.

312

314

Lawrence Kalikow and Francis J. Dermody, Assistant Public Defenders, Harrisburg, for appellant.

Katherene E. Holtzinger-Conner, Deputy District Attorney, Harrisburg, for Com., appellee.

Before WICKERSHAM, ROWLEY and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

Appellant Lynn Stehley was convicted of involuntary manslaughter after a jury trial in which he had been charged with murder and voluntary manslaughter. In his appeal, appellant presents six issues for appellate review:

(1) whether the lower court erred in granting the Commonwealth's request for discovery; (2) whether the trial court properly instructed the jury; (3) the sufficiency of the evidence to support a conviction of involuntary manslaughter; (4) the admission of evidence relating to appellant's reputation; (5) the propriety of allowing the District Attorney to refile murder charges before a second magistrate; and (6) whether the court erred in sentencing the appellant to two concurrent terms, under two different docket numbers, for one conviction. Because of the uniqueness of several issues and the procedural aspects of this case, we find it necessary to deal with the issues seriatim.

The incident underlying appellant's trial and conviction took place at the German-American Friendship Club in Harrisburg, Pennsylvania. In the early morning hours of October 1, 1983, this was the site of an indoor picnic at which appellant was present as a guest and the victim, James Ferguson, was a bartender. Appellant who had been drinking, passed out. Later, he was told to leave the club by Ferguson after Ferguson became aware of appellant urinating on the barroom floor. Upon escorting appellant out of the club, a scuffle erupted between the two. This resulted in Ferguson going over the railing and hitting his head on the concrete four feet below. The victim spent several weeks in the hospital where, despite various operations, he died.

Appellant was arrested and charged with murder. The first district justice bound him over for trial on a voluntary manslaughter charge. After being rearrested, he was bound over on a murder charge by a second district justice.[1] He went to trial on both charges and a verdict of guilty of involuntary manslaughter was returned by the jury.

## I.

■ Appellant's primary allegation of error is one of first impression before this court. The contention is that the

---

1. A more complete analysis of these facts is contained in a later discussion of addpellant's last two arguments.

lower court erred when it ordered the defense to disclose certain information to the Commonwealth through pre-trial discovery. As a result, we are called upon to interpret Pennsylvania Rule of Criminal Procedure 305. More specifically, we must examine Rule 305 C to determine the scope of appellant's duty to disclose.[2] In so doing, we must keep

2. The pertinent parts of Rule 305 C read as follows:
 ### C. Disclosure by the Defendant
 (1) *Mandatory*
 (a) Notice of Alibi Defense: A defendant who intends to offer the defense of alibi at trial shall, at the time required for filing the omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of witnesses whom the defendant intends to call in support of such claim.

 (b) Notice of Insanity or Mental Infirmity Defense: A defendant who intends to offer at trial the defense of insanity, or a claim of mental infirmity, shall, at the time required for filing an omnibus pretrial motion under Rule 306, file of record notice signed by the defendant of the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific available information as to the nature and extent of the alleged insanity or claim of mental infirmity, the period of time which the defendant allegedly suffered from such insanity or mental infirmity, and the names and addresses of witnesses, expert or otherwise, whom the defendant intends to call a trial to establish such defense.

 (c) Disclosure of Reciprocal Witnesses: Within seven (7) days after service of such notice of alibi defense or of insanity or claim of mental infirmity defense, or within such other time as allowed by the court upon cases shown, the attorney for the Commonwealth shall disclose to the defendant the names and addresses of all persons the Commonwealth intends to call as witnesses to disprove or discredit the defendant's claim of alibi or of insanity or mental infirmity.

 (2) *Discretionary With the Court:*
 In all court cases, if the Commonwealth files a motion for pretrial discovery, the court may order the defendant, subject to the defendant's rights against compulsory self-incrimination, to allow the attorney for the Commonwealth to inspect and copy or photograph any of the following requested items, upon a showing of materiality to the preparation of the Commonwealth's case and that the request is reasonable:

in mind that questions involving pre-trial discovery in criminal cases lie generally within the discretion of the trial judge and his actions will not be reversed unless such discretion was abused. *Commonwealth v. Gockley*, 411 Pa. 437, 192 A.2d 693 (1963).

Litigation concerning pre-trial discovery is quite common. The United States Supreme Court case of *Brady v. Maryland* [3] was the beginning of defense rights to state information. *Brady* mandated that certain evidence in the hands of a prosecutor be turned over to the defense. Since then, courts have consistently struggled to comply. [4]

A more recent case discussing pre-trial discovery guidelines is *Wardius v. State of Oregon*. [5] The Supreme Court noted that a liberal practice of pre-trial discovery would best serve the ends of justice. Both parties are deserving of the maximum amount of discovery with which to prepare their cases; discovery is a two way street. In a concurring opinion, however, Justice Douglas cautioned about the rights guaranteed the accused in the Bill of Rights. The courts are not allowed to change the balance which is tipped in favor of the people as a redress to the advantage that inheres in a government prosecution. [6]

> (a) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief, or which were prepared by a witness whom the defendant intends to call at trial, when results or reports relate to the testimony of that witness, provided the defendant has requested and received discovered under paragraph B(1)(e);
>
> (b) the names and addresses of eyewitnesses whom the defendant intends to call in its case in chief, provided that the defendant has previously requested and received discovery under paragraph B(2)(a).

3. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

4. See, e.g., *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *United States v. Ahmad*, 53 F.R.D. 186 (M.D.Pa.1971); *Commonwealth v. Barnes*, 463 Pa. 259, 344 A.2d 821 (1975); *Commonwealth v. Royster*, 472 Pa. 581, 372 A.2d 1194 (1977).

5. 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973). Note that *Wardius* dealt specifically with alibi notice.

6. *Id.*, at 480, 93 S.Ct. at 2214.

Clearly, the purpose of the discovery rules is to insure a fair trial for both parties involved. It cannot be ignored, however, that the accused does not have equal access to the same information as does the Commonwealth. The prosecution is provided with an abundance of information gleaned from various governmental agencies. Most of the sources of this information are closed to the accused. In response to the court's realization of this, Pennsylvania greatly liberalized the discovery rules for criminal cases.[7] These new rulings were intended to rectify the insufficiencies of the then existing rules.[8] The rule took away some of the discretionary powers of a trial judge by making the discovery of specific information mandatory but retained the liberal purpose of the rule by allowing the discretionary discovery of other items. In the myriad of cases discussing discovery issues, few, if any, analyze the problems from the point of Commonwealth discovery.

Mandatory disclosure by the defendant is limited to notice of either an alibi defense or of an insanity or mental infirmity defense. If either of these defenses are to be used, the defendant is required to disclose the pertinent information needed by the Commonwealth. This includes names and addresses of any supporting witness, expert or otherwise. With mandatory disclosure by the defendant comes the right to reciprocal disclosures by the Commonwealth.[9]

Discretionary disclosure by the defendant entitles the Commonwealth to results and reports of all examinations, testing or experiments related to the case as well as the names and addresses of eyewitnesses. Prerequisites to the Commonwealth receiving this information are a showing of

7. New P.R.Crim.P. 305 replaced the old Pa.R.Crim.P. 310, effective January 1, 1978.

8. Rule 310 was criticized as being too stringent and narrow. See, e.g., *Commonwealth ex rel. Specter v. Shiomos,* 457 Pa. 104, 320 A.2d 134 (1974).

9. Pa.R.Crim.P. 305 C(1)(a) and (b).

materiality and reasonableness and that the defendant requested and received reciprocal discovery.[10]

The discovery petitioned for by the Commonwealth and ordered by the trial court judge was: (1) names and addresses of any eyewitnesses the defendant intended to call and a copy of any statement made by or adopted by said witnesses; (2) names and addresses of any expert witnesses the defendant intended to call and a copy of any report by the expert witnesses; and (3) names and addresses of any witnesses intended to be called to establish the defense of intoxication and a copy of any statements given by said witnesses or adopted by them.

Initially, after a close comparison of the judge's order with the guidelines of Rule 305, we agree with appellant that the discovery rights were too broad. With respect to the first item, there can be no dispute that the Commonwealth was entitled to the names and addresses of the eyewitnesses but it was not entitled to any statements of the eyewitnesses. While the rules specifically require the Commonwealth to disclose such statements,[11] the rules do not provide them with a reciprocal right. Since it appears obvious that the legislature purposely did not intend that the Commonwealth receive this information, the judge erred in allowing such discovery.

Granting the Commonwealth's second discovery request was also improper. The rules only provide for two circumstances in which the names and addresses of witnesses are given to the Commonwealth. One is if there are eyewitnesses and the other is if the witnesses would be supporting an alibi defense or an insanity or mental infirmity defense. Names and addresses of expert witnesses are allowed only if they fall within the latter category. So, while the second part of the request pertaining to reports may have been proper, since there was no showing that the experts were in support of a specified defense they were not discoverable.

10. *Id.,* 305 C(2)(a) and (b).
11. *Id.,* 305 B(2)(a).

The last discovery request deals with appellant's state of intoxication on the night of the incident. As previously noted, the Commonwealth is entitled to certain defense witnesses but they are not entitled to all defense witnesses. An intoxication defense is not an alibi nor is it an insanity or mental incapacity defense and, therefore, does not require disclosure of supporting witnesses. Since the names and addresses of intoxication witnesses were outside the parameters of Rule 305, the trial court should not have compelled the appellant to turn them over to the Commonwealth.

 Although the trial judge over extended his discretionary discovery powers, we find no prejudice or harmful error which would require a reversal or a new trial. In reaching that decision, we employ the standards and definitions found in *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). First, an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless, and second, that an error can be harmless only if the appellate court determines that the error could not have contributed to the verdict.

We find support for our result. The appellant's brief is blatantly devoid of any specific, or general, instances of prejudice or harm. In addition, appellant's counsel was provided an opportunity at argument to rectify this deficiency but could not do so. We know only that appellant complied with the order, however, he does not tell us what exactly it was that he was forced to give the Commonwealth and how such compliance hurt his case or contributed to the jury's verdict decision.

## II.

 Appellant's second argument alleges error in the trial court's decision not to instruct the jury on self-defense/justification. After considerable discussion by the court and the attorneys as to the points of charge, it was determined that an instruction of self-defense/justification would only be given if an instruction of voluntary manslaughter was also given. (See Notes of Testimony, p.

291–296). As a result of appellant's objection to the voluntary manslaughter instruction, the jury heard neither the voluntary manslaughter nor self-defense/justification instruction. Appellant now argues that the charge on self-defense/justification should have been given without the charge on voluntary manslaughter being given.

The standard of review used by appellate courts in reviewing a judge's decision as to jury instructions is well established. A court's charge to the jury will be upheld if it adequately and accurately reflects the law and was sufficient to guide the jury properly in its deliberations. They must be read together to determine if they were fair and non-prejudicial. *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Person*, 345 Pa. Super. 341, 498 A.2d 432 (1985); *Commonwealth v. Orlowski*, 332 Pa.Super. 600, 481 A.2d 952 (1984).

A reading of the trial court's rationale as well as the sidebar discussions shows that the judge's decision not to charge on self-defense/justification was proper under the above standard. As noted by the court, the key element in determining either voluntary manslaughter or self-defense/justification is whether or not a defendant acted with "reasonable belief." Should the jury find that he acted with unreasonable belief, a voluntary manslaughter conviction is warranted. If, however, the jury should find that a defendant acted with reasonable belief, then the concept of self-defense/justification would warrant an acquittal. (See Subcommittee Draft of Proposed Jury Instructions, Nos. 9.0505A, 9.505E, 15.2503B). As such, both instructions should be given together if the situation so justifies.

It is undisputed that Pennsylvania law affords a defendant the opportunity to decide if the jury should hear the charge on voluntary manslaughter. *Commonwealth v. Carter*, 502 Pa. 433, 466 A.2d 1328 (1983). In making his decision, the defense must weigh all alternatives. Here, the appellant had to balance the harm of a voluntary manslaughter charge against the benefits of a self-defense charge. In the present situation, he was receiving the

benefit of not having a voluntary manslaughter instruction even though he was charged with the crime of voluntary manslaughter. He was not entitled to have the jury hear the self-defense/justification charge unless they were allowed to hear the charge of voluntary manslaughter as a lesser included offense of murder. Under these particular circumstances, the lower court's ruling must stand.

## III.

Next, appellant argues that the evidence presented at trial was insufficient to support an involuntary manslaughter conviction. Specifically, it is alleged that appellant was not aware of and did not consciously disregard a substantial unjustifiable risk that death could result from his conduct. Furthermore, he argues that there is no evidence that he should have been aware that such a risk existed.

The test for evaluating the sufficiency of the evidence in a criminal case is whether, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner and drawing all reasonable inferences therefrom upon which the jury could properly have based its verdict, there is sufficient evidence to enable the trier of fact to find beyond a reasonable doubt every element of the crime of which the appellant has been convicted. *Commonwealth v. Davis*, 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977); *Commonwealth v. Thomas*, 465 Pa. 442, 350 A.2d 847 (1976); *Commonwealth v. Loar*, 264 Pa.Super. 398, 399 A.2d 1110 (1979).

Appellant, charged with murder and voluntary manslaughter, was found guilty by a jury of involuntary manslaughter.[12] After listening to all the evidence, the jury could reasonably interpret the testimony as satisfying the

12. A person is guilty of involuntary manslaughter when, as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of an unlawful act in a reckless or grossly negligent manner, he causes the death of another person. 18 Pa.C.S.A. Sec. 2504(a).

elements of involuntary manslaughter.[13] The crucial element in order to convict is conduct that is reckless or grossly negligent. After a review of the record we find no unreasonableness on the part of the jury. (Grabbing, pushing or shoving a 62-year-old man over a porch railing so that he hits the ground at least four feet below, head first, definitely leads to a reasonable inference of recklessness or gross negligence). Therefore, we agree with the court below and find the evidence sufficient to sustain the jury's verdict.

## IV.

Appellant next argues that the trial court improperly allowed the Commonwealth to give testimony as to appellant's character. It is well established in Pennsylvania that an individual facing criminal prosecution is allowed to introduce evidence concerning his good reputation or character in any manner that properly relates to the subject matter of the charge at issue. *Commonwealth v. Luther*, 317 Pa.Super. 41, 463 A.2d 1073 (1983). Once his character is put at issue, the appellant's testimony may properly be rebutted by the Commonwealth.

During the case *sub judice*, appellant was asked: "... (D)id you intend to hurt ...?" In his answer, appellant replied: "... I wouldn't hurt anybody that way." Later, in response to another question, the appellant stated: "... I just know I wouldn't hurt that man. I would never intentionally hurt anybody." (N.T., p. 271; 278–279). Appellant's statements were clearly intended to convey to the jury a non-violent nature. He was accused of hurling a man over a porch railing, thereby causing his death. Appellant anticipated that his statements would be interpreted by the jury in a favorable light, to wit, that appellant did not have the tendencies or capabilities to do what was allegedly

---

**13.** In his instructions, the judge stated the elements of involuntary manslaughter to be as follows: first, that James Ferguson is dead; second, that the appellant's conduct was a direct cause of his death; and third, that appellant's conduct was reckless or grossly negligent. See N.T., p. 314–315.

done. As such, the Commonwealth was entitled to show the jury that the appellant was indeed capable of such acts. 10A P.L.E. Criminal Law Sec. 565 (1970 Ed.) (footnotes omitted). Therefore, the lower court properly permitted testimony regarding appellant's reputation in the community for peacefulness.

## V.

Appellant's last two arguments of error are in reference to the Commonwealth's actions in refiling the charge of murder. The District Attorney first brought the murder charge before District Justice Joseph Solomon. After a preliminary hearing, District Justice Solomon determined that a prima facie case of murder was not made but that the appellant could be bound over for trial on a voluntary manslaughter charge. The District Attorney, ex parte, petitioned the court to allow the Commonwealth to refile the murder charge before a second magistrate, District Justice Paul Hardy. The request was granted and appellant was rearrested. At this time, appellant became aware of the Commonwealth's request and filed a petition asking that the resulting order be vacated and that a hearing be granted to respond to the Commonwealth's petition to refile. The appellant's petition for a hearing was denied but, alternatively, was granted a continuance of the second preliminary hearing. When he heard the Commonwealth's evidence, District Justice Hardy found sufficient evidence for murder and bound appellant over for trial on that charge. As a result of these procedural actions, the charges against the appellant were docketed under two numbers, one for the voluntary manslaughter charge and another for the murder charge.

Initially, appellant makes a two-pronged argument, first, that the court should not have allowed the charge to be refiled and, second, that at the very least, the murder charge should not have been refiled ex parte, that is, without notice to appellant and without a hearing. The lower court disagreed with the first part and, although it

agreed with the second part, found no prejudice or harmful error. After a careful review, we agree.

■ The Pennsylvania Supreme Court case of *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) allows the Commonwealth to refile charges dismissed by the magistrate if it finds that it has been aggrieved by the decision. This is in keeping with established Pennsylvania law.[14] In so doing, the Commonwealth need not present additional evidence, although it most often will. *See, In re Riggins*, 435 Pa. 321, 254 A.2d 616 (1969). We decline to hold that merely because the charge against appellant was reduced rather than dismissed the Commonwealth was precluded from refiling if it deems itself aggrieved by the decision.[15] As such, we find no error in the refiling.

■ As with the court below, the fact that the refiling took place *without notice to the appellant* required more serious consideration. As the Commonwealth correctly conceded, appellant should have been allowed an opportunity to argue against the right to refile. Both sides argued *Commonwealth v. Sufrich*, 320 Pa.Super. 56, 466 A.2d 1058 (1983), with the Commonwealth arguing it does not apply and the appellant arguing that it does. While the petition in *Sufrich* was termed "a change in venue," it was actually a change from one district justice to another. It is similar to this case and is therefore applicable. Since *Sufrich* required notice and a hearing be given in situations involving "temporary assignment(s) of a district justice," appellant was entitled to those rights in the present case. Since, however, appellant was not harmed by the decision, reversal is unnecessary. Appellant was given a continuance of the

14. One of the earliest cases allowing the Commonwealth to refile is *Commonwealth v. Sharpless*, 31 Pa.Super. 96 (1906). *Petition of McNair*, 324 Pa. 48, 187 A 498 (1936) is the leading case allowing for refiling after a dismissal of charges by the magistrate. *In re Riggins*, 435 Pa. 321, 254 A.2d 616 (1969) and *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978) follow the reasoning of *McNair*.

15. See also Pa.R.Crim.P. 23 which provides for the temporary assignment of a district justice in order to insure fair and impartial proceedings.

preliminary hearing in order to better prepare. The same evidence was presented by the Commonwealth so appellant was not unfairly surprised by the actions during the proceedings. Furthermore, appellant was ultimately acquitted of the second charge of murder. The final finder of fact determined the issue in appellant's favor. Therefore, the decision by the court, although in error, was never the less harmless.

## VI.

Appellant's last argument is also a result of the previous facts. Because the charges against appellant were docketed under two case numbers, the trial judge imposed two concurrent sentences upon him. This, according to appellant, constitutes error.

■ The Fifth Amendment of the United States contains a protection against double jeopardy. That clause provides "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." The double jeopardy protection consists of three guarantees, one of which protects against multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *North Carolina v. Pearce* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981); *Commonwealth v. Houtz*, 496 Pa. 345, 437 A.2d 385 (1981). Sentences need not be consecutive in order to be multiple. Concurrent sentences, imposed for the same crime, are sufficient to violate the double jeopardy clause. *Houtz, supra. Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976).

■ The present case is clearly one in which the appellant was given multiple sentences for the same offense. Where the crimes charged arise out of the same transaction, differing merely in degree, only one penalty can be imposed. *Commonwealth ex rel. Tokarchik v. Claudy*, 174 Pa.Super. 509, 102 A.2d 207 (1954). It is understood that the trial judge sentenced the appellant

twice because of the procedural problem caused by refiling, but that does not change the result. (Transcript of Sentencing, p. 8–10). A sentence illegally imposed must be remedied. That remedy is to have the illegal sentence striken. *Claudy, supra.* That is the remedy to be effected here.

Affirmed. Remanded for clarification of sentence, consistent with this opinion. Jurisdiction is relinquished.