[No. 55068–9. En Banc. January 13, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRIN RAND HUTCHINSON, SR., *Petitioner.*

*Kathryn Lund Ross,* for petitioner.

*Kenneth O. Eikenberry, Attorney General, Gregory P. Canova, Senior Assistant; David F. Thiele, Prosecuting Attorney,* and *William H. Hawkins, Deputy,* for respondent.

CALLOW, C.J.—The defendant, Darrin Hutchinson, is facing trial for aggravated first degree murder. He was granted discretionary review of the trial court's order of April 19, 1988, which reads in part:

It Is Hereby Ordered, Adjudged and Decreed that the expert witnesses which the defendant intends to call at trial, or at pretrial hearings, on the issues of diminished capacity and/or intoxication, including but not limited to [four medical experts in psychiatry and psychology], shall prepare and submit to [defense counsel] prior to April 28, 1988, and defense counsel shall in turn submit to counsel for plaintiff by no later than April 28, 1988, full written reports specifying the materials, tests and experiments which they conducted in arriving at their conclusions, opinions and diagnoses of the defendant, as well as the analysis that they employed in arriving at such opinions, conclusions and diagnoses, as well as all of the opinions, conclusions and diagnoses themselves. At the

request of defense counsel, the court will review any or all such reports in camera to restrict the use of the defendant's incriminating statements to safeguard the defendant's fifth amendment rights.

Following oral argument before this court an order was entered which stated *inter alia*:

(1) The trial court's April 19, 1988 discovery order is reversed insofar as it requires Mr. Hutchinson's experts to prepare written reports. If any such reports are prepared, however, they shall be provided to the State forthwith pursuant to CrR 4.7(b) and (g);

(2) The trial court's May 25, 1988 order requiring that Mr. Hutchinson submit to an examination by a State's expert is affirmed, but neither the interposing of a diminished capacity defense by Mr. Hutchinson nor his submission to this examination shall be deemed to waive his constitutional right against self–incrimination;

(3) The trial court is authorized to resume all proceedings in this matter and to conduct and regulate discovery pursuant to CrR 4.7 as the court deems appropriate . . .

The issues presented are:

1. Whether CrR 4.7 authorizes a trial court to compel mental health experts employed by a defendant to prepare written reports at the behest of the State when the defendant does not want written reports prepared by his experts?

2. Does the trial court's order infringe upon the defendant's constitutional rights and the attorney–client privilege?

3. May a defendant who has not asserted the defense of insanity, but who has indicated that he will rely upon "diminished capacity" as a defense, be compelled to submit to a psychiatric and/or psychological examination by an agent of the prosecuting attorney?

4. Does a criminal defendant by indicating that he may present at trial expert testimony to raise the defense of "diminished capacity", thereby waive his right against self–incrimination?

We hold the trial court cannot require the expert psychiatric witnesses of the defense to prepare reports for the

prosecution under CrR 4.7. Therefore, we modify the order of the trial court. However, the defendant must submit to psychiatric examination.

On November 14, 1987, two Island County sheriff's deputies were shot to death in a room in which they were preparing to administer a Breathalyzer test to the defendant following his arrest for a driving infraction. The defendant has been charged with two counts of aggravated murder in the first degree. The State has filed notice of intent to seek the death penalty.

On February 9, 1988, the trial court ordered the defendant to file written notice of an intent to rely on the defense of insanity no later than February 19. It was further ordered that both parties should inform each other in writing of the witnesses to be called and provide a written summary of the substance of testimony no later than February 26, 1988. The parties have been engaging in discovery proceedings pursuant to CrR 4.7.

On March 18, the court ordered the defendant to disclose to the State whether the defendant would rely on a defense of diminished capacity or of intoxication at the time of the offense.

On April 7, the trial court issued an order denying the defendant's motion to extend the discovery deadline past April 11. The new order expanded the March 18 order by requiring the defendant to:

> [S]upply the names, addresses and telephone numbers of his witnesses on the issue, both lay and professional, together with any written or recorded statements and the substance of any oral statements of such witnesses, as well as any reports or results, or testimony relative thereto, of physical or mental examinations or of scientific tests, experiments or comparisons or any other reports or statements of experts which the defendant intends to use at a hearing or trial. *If the expert witnesses which the defendant intends to call at trial have not prepared written reports, then the defendant shall provide a summary of the anticipated testimony of said*

*witnesses.* The defendant shall also permit the prosecution to inspect and copy all related medical reports under his control or the control of his attorney.

(Italics ours.)

Upon receipt of this order, counsel for defendant provided the State with a 2–page letter containing three short paragraphs concerning testimony from a psychologist, a psychiatrist, and a neurologist. On April 11, the State filed a motion to compel discovery seeking a meaningful summary of the anticipated testimony and seeking copies of all related medical reports under the defendant's control.

On April 19, the trial court issued the order heretofore quoted and the prosecution wrote directly to all of the defense experts, enclosing a copy of the order and suggesting that this was being done to expedite the report writing process. Upon learning that the prosecution had contacted defendant's witnesses and informed them of the court order, defense counsel instructed the expert witnesses not to comply. The defendant then filed this motion for discretionary review.

I

Criminal discovery is governed by CrR 4.7. CrR 4.7 obliges the defendant to disclose to the prosecuting attorney the persons whom the defendant intends to call as witnesses at the trial, together with any written or recorded statements of such witnesses. Subject to constitutional limitations, the court may require the defendant to "disclose any reports or results, or testimony relative thereto, of physical or mental examinations or of scientific tests, experiments or comparisons, or any other reports or statements of experts which the defendant intends to use at a hearing or trial." CrR 4.7(g). The rule requires the disclosure of any reports of mental examinations but does not require the preparation of such reports. Defense experts need not make any written record of their examinations but, if they do prepare reports, they can be compelled to surrender such documents to the prosecution.

■■ The defendant does not challenge the constitutionality of CrR 4.7 itself, but only that the rule is being applied in an unconstitutional manner. Therefore, we need only apply the rule as written to the problem presented to ascertain if there has been an unconstitutional application. The construction of court rules is governed by the principles of statutory construction. *State v. Baxter,* 45 Wn. App. 533, 540, 726 P.2d 1247 (1986). In applying and interpreting rules adopted by this court we approach them as though they were drafted by the Legislature. *State v. McIntyre,* 92 Wn.2d 620, 622, 600 P.2d 1009 (1979), citing *State ex rel. Schillberg v. Everett Dist. Justice Court,* 90 Wn.2d 794, 585 P.2d 1177 (1978). Language which is clear does not require or permit any construction. *McIntyre,* at 622. Further, where there is no ambiguity in a rule there is nothing for this court to interpret. *See Rhoad v. McLean Trucking Co.,* 102 Wn.2d 422, 426, 686 P.2d 483 (1984); *McIntyre,* at 622; *State v. Roth,* 78 Wn.2d 711, 714, 479 P.2d 55 (1971).

■■ The trial court's order of April 19 exceeds the authority given in CrR 4.7. It is undisputed that the defendant may be required to disclose any existing expert's report he intends to use at trial. However, the rule does not say that an expert can be required to make a report at the request of the opposing party. Defense counsel claims that no written reports have been requested, received or written. The clear language of the rule does not authorize the trial court to require the defendant's experts to prepare written reports for the State when they have not been prepared for the defendant.

The State contends that the trial court's order was necessary because the defendant had not adequately complied with the court's previous discovery orders. Certainly the prosecution is entitled to a full and complete report from defense counsel as to the substance of the testimony defense counsel could expect from any of the medical experts who have examined the defendant at defense counsels' request. CrR 4.7 is procedural rather than substantive. It provides for the accelerated disclosure of information

which ultimately must be revealed at trial and its purpose is to prevent last–minute surprise, trial disruption and continuances. *State v. Wilson,* 29 Wn. App. 895, 901, *review denied,* 96 Wn.2d 1022 (1981); *State v. Nelson,* 14 Wn. App. 658, 545 P.2d 36 (1975). As stated in *State v. Boehme,* 71 Wn.2d 621, 632–33, 430 P.2d 527 (1967), *cert. denied,* 390 U.S. 1013 (1968):

> [T]he rules of discovery are designed to enhance the search for truth in both civil and criminal litigation. And, except where the exchange of information is not otherwise clearly impeded by constitutional limitations or statutory inhibitions, the route of discovery should ordinarily be considered somewhat in the nature of a 2–way street, with the trial court regulating traffic over the rough areas in a manner which will insure a fair trial to all concerned, neither according to one party an unfair advantage nor placing the other at a disadvantage.

(Citations omitted.)

Fed. R. Crim. P. 16 (Discovery and Inspection) is analogous to CrR 4.7. Rule 16(a)(1)(C) provides for the disclosure of documents and tangible objects while rule 16(a)-(1)(D) covers reports of examination or tests.

> Under both (C) and (D) discovery can be had only of those things that are within the possession, custody, or control of the [prosecution]. The [prosecution] cannot be required to disclose evidence that does not exist nor evidence that it does not have or control, although Rule 16(c) does impose a continuing duty to disclose if the [prosecution] later finds the item.
>
> Under subdivision (D) reports of examinations and tests are only discoverable if their existence is known, or by the exercise of due diligence may become known . . . [t]here is no similar condition in subdivision (C).

(Footnotes omitted.) 2 C. Wright, *Federal Practice* § 254, at 64–65 (1982).

Rule 16 provides for reciprocal discovery. It can be inferred that if the government is not required to disclose information that does not exist or that they "do not have control over" then neither should the defendant. Similarly,

under Fed. R. Civ. P. 34, the analogous federal civil procedure rule to CrR 4.7, an adverse party *cannot* be required to prepare or cause a writing to be prepared for inspection, but rule 34 can only be used to require the production of things in existence. *Soetaert v. Kansas City Coca Cola Bottling Co.,* 16 F.R.D. 1, 2 (W.D. Mo. 1954).

The State argues the present order is within the trial court's general power to order any sanction it deems just under the circumstances. CrR 4.7(h)(7)(i). If during the course of the proceedings the court becomes aware that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, "the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7). We decline an interpretation of CrR 4.7(h)(7)(i) which would allow the trial court to compel the production of nonexistent documents.

Reciprocal discovery is required by fundamental fairness. *Wardius v. Oregon,* 412 U.S. 470, 37 L. Ed. 2d 82, 93 S. Ct. 2208 (1973). The Court stated "[a]lthough the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded . . . it does speak to the balance of forces between the accused and his accuser." *Wardius,* at 474. The Court went on to say "that in the absence of a strong showing of state interests to the contrary, discovery must be a two–way street." *Wardius,* at 475. "Indeed, the State's inherent information–gathering advantages suggest that if there is to be any imbalance in discovery rights, it should work in the defendant's favor." *Wardius,* at 475 n.9.

Under the reasoning used in *Wardius,* the defendant is not required to produce documents that do not exist even if the State has disclosed all its tangible documents. The trial court erred by ordering the defendant's expert witnesses to produce documents that do not exist. *Cf. People v. Hummel,* 38 Ill. App. 3d 233, 347 N.E.2d 305 (1976).

II

The defendant contends that the trial court improperly ordered him to submit to an examination by a psychiatrist selected by the prosecution. Subject to constitutional limitations, CrR 4.7(b)(2)(viii) expressly provides that the court may compel the defendant to undergo a reasonable physical, medical, or psychiatric inspection or examination. CrR 4.7(b)(2)(viii) reads: "submit to a reasonable physical, medical, or psychiatric inspection or examination".

The defendant argues that requiring him to submit to a psychiatric examination would deprive him of his right against self–incrimination as he is relying on the defense of diminished capacity. The defenses of insanity and diminished capacity both bring the defendant's mental capacity into question. The elements of the defense of insanity require that the defendant establish by a preponderance of the evidence that at the commission of the offense the defendant was unable to perceive the nature or quality of his acts and unable to tell right from wrong. *State v. Jamison,* 94 Wn.2d 663, 664, 619 P.2d 352 (1980). The defense of diminished capacity requires proof that the defendant lacks the mental capacity to form the specific intent to commit the crime. *State v. Ferrick,* 81 Wn.2d 942, 506 P.2d 860, *cert. denied,* 414 U.S. 1094 (1973).

 CrR 4.7 does not distinguish between insanity as a defense and diminished capacity as a defense for purposes of discovery. *State v. Nuss,* 52 Wn. App. 735, 763 P.2d 1249 (1988); *State v. Brewton,* 49 Wn. App. 589, 744 P.2d 646 (1987).

When a defendant raises an insanity defense and introduces supporting psychiatric testimony, a court may order the defendant to submit to an examination by a state psychiatrist without violating his privilege against self–incrimination. *State v. Nuss, supra.* The same conclusion has been reached in situations in which the defendant has raised a claim of diminished capacity as a defense. *United States v. Halbert,* 712 F.2d 388, 390 (9th Cir. 1983); *United States v. Madrid,* 673 F.2d 1114, 1120 (10th Cir.), *cert.*

*denied,* 459 U.S. 843 (1982); *United States v. Julian,* 469 F.2d 371, 376 (10th Cir. 1972). Where a defendant raises the issue of insanity and the psychiatrist is called to testify, the defendant will not be allowed to muzzle the psychiatrist at his option. Similar considerations apply where the defendant raises the defense of diminished capacity. *Halbert,* at 390.

When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he injected into the case. *Estelle v. Smith,* 451 U.S. 454, 465, 68 L. Ed. 2d 359, 101 S. Ct. 1866 (1981). As stated in *United States v. Cohen,* 530 F.2d 43, 47–48 (5th Cir. 1976):

> Since any statement about the offense itself could be suppressed, a rule forbidding compelled examinations would prevent no threatened evil, and the government will seldom have a satisfactory method of meeting defendant's proof on the issue of sanity except by the testimony of a psychiatrist it selects—including, perhaps, the testimony of psychiatric experts offered by him—who has had the opportunity to form a reliable opinion by examining the accused. To hold that compelled psychiatric examinations are forbidden because sanity is an element of the offense and that the privilege against self–incrimination prohibits compulsory elicitation of statements going to an element of the offense would be confining ourselves within an analytical prison. Given the defendant's power to have any incriminating factual statements resulting from the examination suppressed, we think the proper analogy is to the required furnishing of handwriting exemplars by the defendant and similar procedures.

(Footnotes omitted.) "[I]t would be incongruous to allow a party to put a matter in issue and then deny access of an opposing party to relevant information concerning it." *State v. Cole,* 295 N.W.2d 29, 35 (Iowa 1980), citing 8 J. Wigmore, *Evidence* § 2388, at 855 (1961). "Our modern concept of criminal trials favors full disclosure of facts, within constitutional limitations, on both sides of the table.

The 'sporting' theory of justice resulting from concealment and surprise is no longer the rule." *Cole,* at 35. If defendant asserts a lack of mental capacity, whether it is called diminished capacity or insanity, he is required to undergo a court ordered psychiatric examination. *People v. Mangiapane,* 85 Mich. App. 379, 271 N.W.2d 240 (1978); *Commonwealth v. Stehley,* 350 Pa. Super. 311, 504 A.2d 854 (1986). *See also Tarantino v. Superior Court,* 48 Cal. App. 3d 465, 122 Cal. Rptr. 61 (1975). *Compare State v. Vosler,* 216 Neb. 461, 345 N.W.2d 806 (1984) *with Posner v. Superior Court,* 107 Cal. App. 3d 928, 166 Cal. Rptr. 123 (1980).

This court followed *Estelle* and *Cohen* in *State v. Bonds,* 98 Wn.2d 1, 20, 653 P.2d 1024 (1982), *cert. denied,* 464 U.S. 831 (1983), in which we held that a psychologist who had examined a juvenile and testified in his favor at a decline hearing could be called by the State to testify at the juvenile's trial as an adult to rebut the insanity defense.

The defense of diminished capacity, like the defense of insanity, waives the doctor–patient privilege where a court has ordered an examination. *State v. Brewton,* 49 Wn. App. 589, 590–91, 744 P.2d 646 (1987) (citing *State v. Tradewell,* 9 Wn. App. 821, 824, 515 P.2d 172, *review denied,* 83 Wn.2d 1005 (1973), *cert. denied,* 416 U.S. 985 (1974)), held that a defendant who raises insanity or diminished capacity as a defense has "abandoned his right of medical privacy and waived the statutory physician–patient privilege as to any medical testimony which tends to contradict or impeach his medical evidence"; that a defendant who asserts diminished capacity waives both the physician–patient privilege and the privilege against self–incrimination; that there is no distinction between insanity and diminished capacity in this regard and that the allowance of a privilege would deprive the State and the jury of important evidence on the defendant's mental condition. "[P]rivacy is lost when a patient chooses to place a mental or physical condition in issue, and a fair determination of the issue requires waiving the privilege." *Brewton,* at 592, citing Saltzburg, *Privileges and Professionals: Lawyers and*

*Psychiatrists,* 66 Va. L. Rev. 597 (1980). *See* Trowbridge, *Competency and Criminal Responsibility in Washington,* 21 Gonz. L. Rev. 691 (1986).

Courts have been careful to restrict the use of a defendant's incriminating statements. *Brewton,* at 592. *United States v. Cohen,* 530 F.2d 43, 48 (5th Cir. 1976); *State v. Craney,* 347 N.W.2d 668, 673 (Iowa), *cert. denied,* 469 U.S. 884 (1984). The trial court can protect the defendant's Fifth Amendment interests by "refusing to permit cross examination on statements that might be considered confessional." *Brewton,* at 592. This achieves a proper balance between the competing interests of full disclosure while protecting privacy and the right against self–incrimination.

We follow *State v. Craney, supra* at 673, in holding:

> we are persuaded the better view is that a distinction should be drawn between testimony by the expert (a) which on the one hand gives (i) his opinion on sanity or insanity and (ii) his non–incriminatory observations in arriving at his opinion including non–incriminatory statements by the defendant, and (b) which on the other hand gives his incriminatory observations in arriving at his opinion including incriminatory statements by the defendant. Opinions, observations, and statements under branch (a) are admissible, but observations and statements under branch (b) are inadmissible. Under these principles, an observation or statement is not "incriminatory" merely because it tends to show the defendant is sane.

And as observed in *People v. Rosenthal,* 617 P.2d 551, 555 (Colo. 1980):

> More fundamentally, unrestricted prosecutorial use at the guilt trial of the defendant's psychiatric communications clashes directly with the privilege against self–incrimination. *U.S.Const.* Amends. V and XIV; *Colo. Const.* Art. II, Sec. 18. As the circumstances here indicate, a defendant seeking a sanity examination by a privately retained psychiatrist would be required to forego her privilege against self–incrimination at the guilt trial in order to assert adequately her right to plead and defend on grounds of insanity. If the prosecution is permitted to make unrestricted use at the guilt trial of the

defendant's psychiatric communications during a sanity examination by a privately retained psychiatrist, the defendant in effect becomes a witness against herself through the conduit of the psychiatric examiner. . . . The procedures governing the insanity defense cannot be applied in a manner that destroys the constitutional safeguard against self–incrimination. *French v. District Court,* 153 Colo. 10, 384 P.2d 268 (1963). We hold, therefore, that the prosecution may not call as a witness in its case–in–chief during the guilt trial a psychiatrist privately retained by the defendant in connection with an insanity plea and elicit from the psychiatrist incriminating admissions made by the defendant during a sanity examination.

*See also United States v. Leonard,* 609 F.2d 1163 (5th Cir. 1980).

The defendant contends that the trial court's order is premature inasmuch as he has not actually asserted diminished capacity at trial or presented any evidence of his mental condition. However, having indicated that he might rely upon diminished capacity as a defense, defendant has opened the door for discovery of his mental condition and for psychiatric examination. While the defendant has a right to the presence of counsel during such an examination, counsel may not inhibit the examination. The defendant, upon such an examination, may refuse to answer any question if he believes his answer might tend to incriminate him or lead to evidence of an incriminating nature. RCW 10.77.020(4).

We hold the defendant must submit to an examination as to mental condition and capacity by such psychiatrists as the prosecution shall choose. The expert witnesses who have examined the defendant for the defense cannot be required to prepare reports for the benefit of the prosecution. However, defense counsel can be required to fully disclose in writing the testimony that such expert witnesses can be expected to relate at trial. Whether defense counsel has fairly and fully set forth a recapitulation of such expected testimony is for the trial court to say. Defense

counsel are entitled to attend any examination of the defendant by the prosecution's expert witnesses, but may not interfere with or participate in the examination. The trial court is responsible for the protection of the constitutional rights of the defendant against self–incrimination by in camera consideration of any written report and, during the course of the trial, by exclusion of testimony pertaining to guilt.

The cause is remanded for trial.

UTTER, BRACHTENBACH, DOLLIVER, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.

Reconsideration denied February 16, 1989.