**COMMONWEALTH of Pennsylvania**

v.

**Eliezer PEREZ, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1997.

Filed Aug. 1, 1997.

David J. Long, Assistant Public Defender, Reading, for appellant.

Eric S. Slaton, Assistant District Attorney, Worcester, for Commonwealth, appellee.

Before CAVANAUGH, HUDOCK and HESTER, JJ.

CAVANAUGH, Judge.

Appellant, Eliezer Perez, was tried before the Honorable Jeffrey K. Sprecher and a jury and found guilty of first degree murder, two counts of aggravated assault, possessing a criminal instrument, and carrying a firearm without a license. On February 28, 1996, appellant was sentenced to life imprisonment for first degree murder as well as consecutive terms of six to twenty-three months for possessing an instrument of crime and nine to twenty-three months for carrying a firearm without a license, to run following his life sentence.

There was evidence to support the following:

On March 29, 1995, around 10:00 p.m., Amildo Toro, Jr., the victim, was in the parking lot of Vaccaro's Six Pack Outlet in Reading, Pennsylvania. Toro entered the store and purchased a bottle of beer. While Toro was in the store appellant drove into the parking lot of the store. A bystander asked appellant if he was looking for someone and appellant replied that he was not and drove

away only to return moments later as Toro exited the store. Appellant called Toro over to his car and the two engaged in a conversation. Appellant was sitting inside his vehicle and Toro was standing outside the driver's side window. Approximately thirty seconds later, witnesses heard a single gunshot and saw a flash emanating from appellant's vehicle. Toro fell to the ground and was taken to the hospital where he died from a fatal gunshot wound to his neck.

Appellant raises three issues for our review:

I.  Whether the trial court erred by compelling production by the defense of a pretrial statement by defense witness, Jose Rodriguez.

II. Whether the Commonwealth failed to establish beyond a reasonable doubt that the killing was willful, deliberate and premeditated, when the evidence of self-defense was overwhelming and unrefuted.

III. Whether the trial court erred by failing to suppress appellant's statement to police while in custody, without *Miranda* warnings.

■ Appellant first argues that the trial court erred in compelling him to turn over a pretrial statement of a defense witness. He claims that the Pennsylvania Rules of Criminal Procedure do not require a defendant to disclose defense statements which are unrelated to an alibi or mental insanity defense. Appellant argues that Rule 305 of the Rules of Criminal Procedure does not entitle the Commonwealth to such a request for reciprocal discovery and it was error for the court to compel discovery of the statement.

The motion to compel discovery was made by the Commonwealth at the close of its case. The Commonwealth requested the disclosure of any and all written statements from defense witnesses who were expected to testify at trial. This included any signed statements from witnesses, as well as any memoranda prepared which contained substantially verbatim versions of those statements. The Commonwealth's motion to compel the disclosure of defense statements was based on the Pennsylvania Supreme Court's decision in

*Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980 (1984).

Following brief argument on the motion to compel, the trial court reviewed, in camera, the statements and memoranda of the defense witnesses expected to testify. The trial court concluded that *Brinkley* required disclosure of statements that were "signed, adopted or otherwise shown to be substantially, verbatim statements" of the witnesses. As such, the court compelled the defense to disclose the statement of Jose Rodriguez finding that it was the only statement that met the requirements set forth in *Brinkley.* This statement was signed by Rodriguez and notarized. The Commonwealth then used the statement to impeach the testimony of Rodriguez on cross-examination.

Initially, we note that the request at issue here is distinguishable from a request for the disclosure of a testifying witness' statement after he has affirmed that he gave a statement to a defense investigator. Presently, the request is a blanket discovery request for all witness statements.

In compelling disclosure the trial court relied upon *Brinkley,* wherein former Justice Larsen, writing for the majority, held that the attorney work product doctrine did not preclude disclosure of witness statements in defense counsel's possession. However, in reaching this result the court wrote that:

> It is well established that where the Commonwealth has in its possession pretrial statements of its witnesses which have been reduced to writing and relate to the witness' testimony at trial, it must, if requested, furnish copies of these statements to the defense. *Commonwealth v. Gartner,* 475 Pa. 512, 381 A.2d 114 (1977). *So too, where the defense attorney possesses pretrial statements of witnesses, the needs of the criminal justice system require disclosure.*

*Brinkley,* 505 Pa. at 449, 480 A.2d at 984(emphasis added). Thus, in reaching the conclusion that the work product doctrine did not bar disclosure, the court stated that the defense was obligated to turn over any statements from their witnesses. The only authority the court cited for this proposition was *In the Matter of Pittsburgh Action*

*Against Rape,* 494 Pa. 15, 428 A.2d 126 (1981), where the court had noted the benefits of liberal discovery rules. In that case, the court commented that generally our criminal justice system is a search for the truth and disclosure over suppression of evidence promotes that purpose. *Id.* at 25, 428 A.2d at 130.

The court in *Brinkley* quoted the United States Supreme Court in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), wherein it was stated "[t]o ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed *either by the prosecution or the defense."* *Brinkley, supra* at 450, 480 A.2d at 984 (emphasis in original) (quoting *Nixon, supra* at 709, 94 S.Ct. at 3108). Without any further discussion, the court in *Brinkley* concluded that "the statements of the witnesses in defense counsel's possession were not protected against disclosure by the work product privilege especially in light of the trial court's narrowly drawn disclosure order." *Id.*[1]

We do not find *Brinkley* to be carte blanche authority for mutual discovery. *Brinkley* simply concluded that the work product doctrine did not bar disclosure of witness statements and never addressed whether such a discovery right was permitted under the discovery rules. The comments by the court which are read to create such discovery rights are dicta and therefore, not controlling over the present issue. *Commonwealth v. Ayers,* 363 Pa.Super. 232, 235 n. 1, 525 A.2d 804, 805 n. 1 (1987)(dicta is not binding as precedent). We find contemporaneous support for this conclusion in the comments of Chief Justice Nix in his concurring opinion in *Brinkley.* He also concluded that any such notion that the majority's opinion "implies that the Commonwealth should be entitled to reciprocal discovery in criminal prosecutions" was dicta. *Brinkley, supra* at 460, 480 A.2d at 990 (Nix, C.J., concurring). Further support is found in the fact that our supreme court has not amended the Rules of Criminal Procedure to allow for such broad discovery.

*Brinkley* is also distinguishable from the case at bar. There, the court only addressed a limited discovery request. The Commonwealth there requested the disclosure of witness statements after a witness during cross-examination admitted to having given a statement to a defense investigator. The defense objected and argued that the requests were protected by the work product doctrine. The trial court overruled the objection and ordered the defense to disclose the statements. In the case at bar the Commonwealth made a blanket discovery request for any statements of defense witnesses. Specifically, they requested "the copies of all statements written or tape recorded or otherwise substantially verbatim statements of any witness that the defendant ... intends to call at trial in his case in chief." This request of course for discovery is much broader than that in *Brinkley.*

*Brinkley* cites to *U.S. v. Nixon* for the suggestion that discovery rights must be more liberal to promote the "search for the truth." However, the more liberal the discovery rules become, the greater the advantage the Commonwealth has in prosecuting its case. Chief Justice Nix took note of this problem when he observed that the United States Supreme Court has recognized that the state has a distinct advantage in its ability to investigate and prosecute a case, and if the discovery process should favor any side it should be in defendant's favor. *Brinkley, supra* at 462, 480 A.2d at 991 (Nix, C.J., concurring)(citing *Wardius v. Oregon,* 412 U.S. 470, 475, n. 9, 93 S.Ct. 2208, 2212, n. 9,

---

1. The *Brinkley* discussion was limited to whether the work product doctrine precluded the disclosure of the statements of defense witnesses. A number of states dealing with the same issue have recognized that this issue implicates a number of constitutional and societal considerations such as the Fifth Amendment right against self-incrimination, the attorney-client privilege, and even the effective assistant of counsel. *See e.g., People v. Collie,* 30 Cal.3d 43, 177 Cal.Rptr. 458, 634 P.2d 534 (1981)(assistance of counsel, attorney-client privilege); *Scott v. Alaska,* 519 P.2d 774 (Alaska 1974)(privilege against self-incrimination under the Alaska Constitution); *Richardson v. District Court,* 632 P.2d 595 (Colo. 1981)(self-incrimination, work product); *Connecticut v. Whitaker,* 202 Conn. 259, 266, 520 A.2d 1018, 1022 (Conn.1987)(recognizing the constitutional and societal concerns of such discovery rules).

37 L.Ed.2d 82 (1973) and *Murphy v. Waterfront Comm.*, 378 U.S. 52, 55, 84 S.Ct. 1594, 1596–97, 12 L.Ed.2d 678 (1964)). Chief Justice Nix closed his concurring opinion in *Brinkley* by noting that any notion of reciprocal discovery rights pertaining to statements in the possession of the defense "would impermissibly tip the balance of advantage even more heavily in the prosecution's favor." *Brinkley, supra* at 462, 480 A.2d at 991 (Nix, C.J., concurring). We agree.

It is also important to note that *Brinkley* has not been affirmatively cited for the privilege of reciprocal discovery in any subsequent case. The only case to mention this decision for the proposition at hand was *Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221 (1995), where our supreme court addressed a question of prosecutorial misconduct. In *LaCava*, the Commonwealth, in the presence of the jury, requested that the defense turn over witness statements which the defense had neglected to turn over from a pretrial request. On appeal, defendant argued that such a request in front of the jury amounted to prosecutorial misconduct. The court concluded that it was not misconduct because the Commonwealth had previously requested the information and it was a risk the defense took when it neglected to turn over properly requested material. The court then parenthetically cited to *Brinkley* to support the underlying proposition that the requested information, the statements of defense witnesses, was a proper request. We conclude that *LaCava* can not be said to have affirmatively cited *Brinkley* as an authority approving the right of reciprocal discovery.

Therefore, without a more definitive ruling from our high court on the present issue, we look to alternative authority. The Pennsylvania Rules of Criminal Procedure, Rule 305 lists the discovery obligations for both parties in a criminal prosecution. Subsection (C) outlines the mandatory discovery obligations for a defendant. It dictates that a defendant must provide notice of an alibi defense and an insanity or mental infirmity defense and information with respect thereto.

Any other discovery request of a defendant is discretionary with the court. Pa. R.Crim.P. 305(C)(2). This includes the results and reports of examinations, tests or experiments and, under certain circumstances, disclosure of the names and addresses of eyewitnesses. Pa.R.Crim.P. 305(C)(2). Nowhere in this explicit rule does it grant a right to written or taped statements of defense fact-witnesses. Thus, although our Supreme Court has suggested that defense witness statements are discoverable, they have not amended the Rules of Criminal Procedure to include such broad and sweeping reciprocal discovery rights and until our high court advises otherwise we choose to read *Brinkley* narrowly.

Support for this conclusion is found in *Commonwealth v. Stehley,* 350 Pa.Super. 311, 504 A.2d 854 (1986), where our court addressed a similar issue. In *Stehley* some of the items the Commonwealth requested included the names, addresses and statements of eyewitnesses defendant intended to call at trial. *Id.* at 319, 504 A.2d at 858. There, we held that a request for discovery of defense witness statements was too broad and not permitted by Rule 305(C). *Id.* We concluded that "[w]hile the rules specifically require the Commonwealth to disclose such witness statements, the rules do not provide [the Commonwealth] with reciprocal discovery." However, no mention was made of *Brinkley* in this opinion. We conclude that in the case at bar the trial court erred in tacitly approving the grant of blanket discovery of the defense witness's statements.

We do recognize that the trend in many jurisdictions has been to adopt reciprocal discovery statutes which require the disclosure of witness statements in possession of the defense.[2] However, we also note that some jurisdictions will not extend such broad

---

2. Some of the states which have recently adopted such legislation include: Cal.Pen.Code § 1054.3(a)(requiring disclosure of written or recorded statements); Ga.Code Ann. § 17–16–7 (requiring any disclosure of any statements relating to witness testimony); Mich.R.Crim.Proc. 6.201(A)(2) (mandating disclosure of statements by lay witnesses). Some states have extended reciprocal discovery to include written summaries of any oral statements by defense witnesses. *See, e.g.,* Ill.Sup.Ct.R. 413(d)(i); Mo.R.Crim.P. 25.05(A)(2).

discovery rights to the prosecution absent explicit statutory authority because of the constitutional questions it raises.[3] We too choose to exercise judicial restraint and respectfully suggest that the issues associated with reciprocal discovery rights for the Commonwealth would be more appropriately handled through authorities other than this court.

■ Although we find that the trial court's tacit approval of reciprocal discovery rights against a criminal defendant to have been in error, we may affirm the action of a trial court on any ground. *Commonwealth v. Allsup*, 481 Pa. 313, 316, 392 A.2d 1309, 1310 (1978); *Hutchison by Hutchison v. Luddy*, 417 Pa.Super. 93, 113 n. 7, 611 A.2d 1280, 1291 n. 7 (1992).

■ Here witness Rodriguez admitted giving a statement to a defense investigator on the stand. During cross-examination by the Commonwealth, Rodriguez stated the following:

Q. I'm placing in front of you, sir, what's been marked as Exhibit No. 13, that is an 8–page document that consists of a statement that you gave to Mr. Nevin Frey in this case, isn't that right?

A. Yes.

It is basic law that when a witness has given a statement to a party and testifies on behalf of that party, an adverse party may obtain disclosures or that statement for review and use on cross-examination. *Commonwealth v. Lively*, 530 Pa. 464, 469, 610 A.2d 7, 9 (1992); *Commonwealth v. Presbury*, 445 Pa.Super. 362, 375, 665 A.2d 825, 832 (1995); *Commonwealth v. Jones*, 434 Pa.Super. 469, 476, 644 A.2d 177, 180 (1994). This in fact is allowed by *Brinkley* in the manner in which we feel it must be read. *Brinkley, supra* at 449, 480 A.2d at 984.

Since the statement under existing authority would have been made available to the Commonwealth, we conclude that its disclosure and usage was proper and that any perceived error by the trial court in its ruling on discovery is harmless.

■ Appellant's second claim is that the evidence presented at trial did not establish first degree murder beyond a reasonable doubt, in that it did not prove that the killing was willful, deliberate and premeditated. Appellant argues that he acted in self-defense and that the Commonwealth failed to disprove that claim. Appellant cites to the testimony of Jose Rodriguez. He testified on direct examination that the victim approached appellant, punched him and then dragged appellant from his vehicle. Appellant also cites to the testimony of Angel Valentine, who stated that appellant told him that he did not mean to do it, after appellant had been arrested. Valentine said that appellant told him that the victim was angry, punched appellant and tried to pull appellant from the vehicle, and that the victim had the gun.

■ The testimony and credibility of Rodriguez was pivotal to appellant's claim of self-defense. Appellant's sufficiency claim has no merit. It is well settled that the test for determining the sufficiency of the evidence is, when:

viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined all the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Williams*, 532 Pa. 265, 272, 615 A.2d 716, 719 (1992); *Commonwealth v. Rhodes*, 510 Pa. 537, 540, 510 A.2d 1217, 1218 (1986).

*Commonwealth v. Hagan*, 539 Pa. 609, 613, 654 A.2d 541, 543 (1995). The credibility of witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact, who is free to believe all, some or none of the evidence.

---

**3.** *See, e.g., Vermont v. Barrows*, 158 Vt. 445, 614 A.2d 377, 380 (1992)(state may not subpoena defense witness statements taken by a defense investigator where limiting language in rules does not provide for that type of discovery); *Richardson v. District Court*, 632 P.2d 595, 599 (Colo.1981)(prosecution denied discovery of witness statements because not expressly permitted in the rules of discovery); *Connecticut v. Whitaker*, 202 Conn. 259, 520 A.2d 1018 (Conn.1987)(absent statutory authorization, disclosure of defense witness statements is not warranted due to the important constitutional and societal concerns it raises).

**646**

*Commonwealth v. Shoup*, 423 Pa.Super. 12, 16, 620 A.2d 15, 17 (1993).

■ In order to obtain a conviction for first degree murder, the Commonwealth must prove beyond a reasonable doubt that a human being was killed and that the defendant intentionally did the killing. 18 Pa. C.S.A. 2502(a),(d); *Commonwealth v. Wilson*, 543 Pa. 429, 438, 672 A.2d 293, 297 (1996). The specific intent to kill may be inferred from defendant's use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Bond*, 539 Pa. 299, 305, 652 A.2d 308, 311 (1995).

The Crimes Code provides the following to determine whether the use of force is justified for self-protection:

(a) The use of force upon or towards another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion ... [and]

(b)(2) [t]he use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death [or] serious bodily injury ...

18 Pa.C.S.A. § 505. Although the statute provides that the actor must "believe" that the use of force is necessary, § 501 of the Crimes Code defines "believe" as "reasonably believe." *Commonwealth v. Jones*, 231 Pa.Super. 300, 304, 332 A.2d 464, 466 (1974).

■ In *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974), the Pennsylvania Supreme Court stated:

[T]he requirement that the defendant be operating under a reasonable belief that he is harm, or some felony, involves two elements. First, the defendant must have acted out of an honest, bona fide belief that he was in imminent danger. Second, the belief must be reasonable in light of the facts as they appeared to him. The first element is entirely subjective; the second element is entirely objective.

*Id.* at 334, 326 A.2d at 292 (citation omitted). Whether a defendant acts out of an honest, bona fide belief and whether such a belief was reasonable are issues properly resolved by the trier of fact. *Commonwealth v. Hill*, 427 Pa.Super. 440, 446, 629 A.2d 949, 952 (1993).

Instantly, the trial court properly instructed the jury as to the requirements for first degree murder and the use of self-defense. The jury returned a verdict on the charge of first degree murder and therefore, it is clear that the jury was satisfied beyond a reasonable doubt that appellant did not act in self-defense. This conclusion is supported by the record. The evidence demonstrates that appellant twice came to Vaccaro's Six Pack Outlet. When appellant saw the victim he immediately called him over to his vehicle and the two engaged in a conversation. Moments later, the witnesses testified that they heard a gunshot and saw a flash emanate from appellant's vehicle. The victim grabbed his neck and fell to the ground as appellant sped away. The victim died from a single gunshot wound to his neck. Appellant was the only individual in the vehicle. Moreover, the testimony at trial established that appellant and the victim were not engaged in threatening or assaultive behavior before the shooting occurred. Based on the evidence above, a jury could reasonably conclude that appellant committed first degree murder and did not act in self-defense.

■ Appellant's final claim on appeal is that the trial court erred by not suppressing a statement he gave to detectives from the Reading police department. Appellant argues that the statement he made to Detective Bruce Dietrich, in a police vehicle while being transferred by police from York to Reading, Pennsylvania, should have been suppressed because he was not read his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant's claim is without merit.

As the trial court correctly summarized, on March 30, 1995, Detective Bruce Dietrich, Detective Timothy Williams and Detective Martin Harris of the Reading Bureau of Police were sent to the city of York to take custody of appellant, who was in a holding the sole witness at the suppression hearing. He testified that when they arrived, they took appellant to a district justice for arraignment. At the arraignment appellant was advised of his right to remain silent and confer with an attorney. Following the arraignment, appellant was placed in the detectives' vehicle for the return trip to Reading.

While stopped at a traffic light, appellant stated to Detective Dietrich that he knew he was in trouble and wanted to make a deal. The detective then replied that he was not in a position to make such negotiations. There is no evidence to suggest that appellant was questioned or threatened in any manner by the detectives. At no time did the detectives advise appellant of his *Miranda* rights.

*Miranda* warnings are only necessary when a suspect is undergoing a "custodial interrogation." *Commonwealth v. Washington,* 438 Pa.Super. 131, 138, 651 A.2d 1127, 1131 (1994); *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985). "Interrogation is police conduct calculated to, expected to, or likely to evoke admission." *Commonwealth v. Simala,* 434 Pa. 219, 226, 252 A.2d 575, 578(1969). Absent any notion of interrogation, the statement is classified as a voluntary statement that is not subject to suppression for lack of warnings. *Washington, supra* at 138, 651 A.2d at 1131. A spontaneous utterance unsolicited by the police is admissible. *Id.* It is clear from the record that appellant's statements were wholly unsolicited and not in response to any interrogation by the detectives. Therefore, absent interrogation, appellant's unsolicited statement was admissible.

Judgment of Sentence Affirmed.