# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47238-4-II |
| Respondent, | |
| v. | |
| LIA YERA TRICOMO, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Lia Yera Tricomo pleaded guilty to second degree murder, three counts of second degree assault, and second degree taking a motor vehicle without owner's permission. Tricomo appeals, arguing that her convictions violate double jeopardy, her plea was not entered voluntarily, and that the trial court erred in not considering evidence at sentencing. We disagree and affirm.

## FACTS

Tricomo and the victim, her former counselor, had a sexual encounter at the victim's home in the upstairs bedroom. Following the sexual encounter, Tricomo repeatedly slit the victim's throat with a razor knife. Tricomo acknowledged that she brought the knife to the upstairs bedroom in preparation to kill the victim. For several hours after having his throat slit, the victim "walked around the house," attempting to stop the bleeding. Clerk's Papers (CP) at 5. Tricomo, concerned that the victim would attempt to leave the house, struggled with the victim over the razor knife at the entryway. The victim's wrists were cut in the struggle. The victim then went

back upstairs to the bedroom, and Tricomo strangled him with an electrical extension cord, killing him.

The State charged Tricomo with second degree murder and three counts of second degree assault.[1]  At the plea hearing, the trial court informed her that the applicable maximum term of confinement for the second degree murder charge was a life sentence, the "standard range of actual confinement was 257 to 357 months," and the State would recommend a sentence of 357 months. Verbatim Report of Proceedings (VRP) (Nov. 6, 2014) at 7.  Tricomo acknowledged that she understood.

At sentencing, Tricomo offered an expert report that included a discussion of the effects of Tricomo's medication.  The trial court ruled that it would consider the expert's report for purposes of background information, but that it would disregard the expert's discussion of medication because "I don't find that [the expert] has any expertise in that particular area and she basically only sets forth a number of articles suggesting that they may have some relevance."  VRP (Jan. 28, 2015) at 39.  The trial court reviewed letters from individuals in support of Tricomo, two reports from Western State Hospital, and portions of Tricomo's expert's report.  The trial court noted that the "issue before me today is not whether or not Ms. Tricomo had the ability to form a specific intent to kill.  That's been established by her pleading guilty to this charge."  VRP (Jan. 28, 2015) at 92.  Ultimately, the court sentenced Tricomo to 357 months, which was within the standard sentencing range.  Tricomo appeals.

---

[1] The State also charged Tricomo with second degree taking a motor vehicle without the owner's permission.  The morning after Tricomo strangled the victim, she left the victim's home in the victim's vehicle.  The conviction for second degree taking a motor vehicle is not at issue in this appeal.

No. 47238-4-II

ANALYSIS

A.    DOUBLE JEOPARDY

Tricomo argues that double jeopardy bars her convictions for three counts of second degree assault, and her convictions for second degree assault and second degree murder.  Tricomo did not raise the double jeopardy argument below, but a constitutional challenge may be raised for the first time on appeal.  *State v. Adel*, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998); *see accord State v. Reeder*, 181 Wn. App. 897, 925-26, 330 P.3d 786 (2014), *review granted in part*, 337 P.3d 325, *aff'd*, 184 Wn.2d 805, 365 P.3d 1243 (2015).

Both the federal and state double jeopardy clauses protect against multiple punishments for the same offense.  U.S. CONST. amend. V; WASH. CONST. art. I, § 9; *State v. Hart*, 188 Wn. App. 453, 457, 353 P.3d 253 (2015).  Generally, a guilty plea will insulate the defendant's conviction from collateral attack.  *State v. Knight*, 162 Wn.2d 806, 811, 174 P.3d 1167 (2008).  A guilty plea waives "'constitutional rights that inhere in a criminal trial, including the right to trial by jury, the protection against self-incrimination, and the right to confront one's accusers.'"  *Knight*, 162 Wn.2d at 811 (quoting *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004)).  But claims that go to "'the very power of the State to bring the defendant into court to answer the charge brought against him,'" like the double jeopardy clause, are not waived by guilty pleas.  *Knight*, 162 Wn.2d at 811 (quoting *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974)); *see Menna v. New York*, 423 U.S. at 62, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975).  After a defendant pleads guilty, "the double jeopardy violation must be clear from the record presented on appeal, or else be waived."  *Knight*, 162 Wn.2d at 811.

3

We review alleged violations of double jeopardy de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). Different double jeopardy analyses apply depending on whether the convictions at issue were under the same statutory provision or different statutory provisions. *Villanueva-Gonzalez*, 180 Wn.2d at 980. Where a defendant has multiple convictions under the same statutory provision, we apply the "unit of prosecution" analysis. *Villanueva-Gonzalez*, 180 Wn.2d at 980. But when a defendant has convictions under different statutes, we apply the same evidence analysis.[2] *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995).

1.      Three Counts of Second Degree Assault

Tricomo was convicted of three counts of second degree assault pursuant to RCW 9A.36.021. Because the second degree assault convictions arise from the same statutory provision, we apply the "unit of prosecution" analysis. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81.

Tricomo argues that her acts constituted a single criminal episode driven by the singular intent to kill the victim. Tricomo argues that because her acts were a single criminal episode, she could only be convicted of one count of assault, or two at the most, but definitely not three.

Tricomo was charged, in relevant part, with three counts of second degree assault[3] stemming from the events of one evening. Count II charged second degree assault based on the "use of a razor knife to inflict neck wounds." CP at 25. Count III charged second degree assault

---

[2] The same evidence test mirrors the federal "same elements" standard adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State v. Gocken*, 127 Wn.2d 95, 107, 896 P.2d 1267 (1995).

[3] RCW 9A.36.021(1)(a), (c).

based on the "use of a razor knife to inflict facial wounds." CP at 25. And count IV charged second degree assault based on the "use of a razor knife to inflict hand wounds." CP at 25.

Tricomo pleaded guilty as charged and agreed that the trial court could rely on the State's statement of probable cause and police reports to find the facts necessary to establish a factual basis for her plea. The trial court found that a sufficient factual basis existed in the record before it to accept the plea.

### a. Count III (facial wounds)

The statement of probable cause does not include any information about count III, the assault charge based on infliction of facial wounds. And, the record does not contain any police reports. It is the appellant's burden to provide a sufficient record for us to review. *See State v. Gomez*, 183 Wn.2d 29, 34, 347 P.3d 876 (2015). Because a double jeopardy violation is not clear from the record presented on review, we hold that Tricomo waived her challenge to count III, the second degree assault conviction based on the use of a razor knife to inflict facial wounds. *Knight*, 162 Wn.2d at 811.

### b. Count II (neck wounds) and Count IV (hand wounds)

Tricomo argues that "it is clear from the facts" that her acts "constituted a single criminal episode driven by the singular intent to kill" the victim. Br. of Appellant at 9. Tricomo also acknowledges that the facts may support two assault counts. But the record shows that the two assaults were separate courses of conduct.

Assault is a course of conduct crime, which "'helps to avoid the risk of a defendant being 'convicted for every punch thrown in a fistfight.'" *Villanueva-Gonzalez*, 180 Wn.2d at 985 (quoting *State v Tili*, 139 Wn.2d 107, 116, 985 P.2d 365 (1999)). Thus, if multiple assaultive acts

constitute only one course of conduct, then double jeopardy protects against multiple convictions. *Villanueva-Gonzalez*, 180 Wn.2d at 985. There is no bright-line rule for when multiple assaultive acts constitute one course of conduct. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. In determining whether multiple assault acts constitute one course of conduct, we consider the length of time over which the acts occurred, the location of the acts, the defendant's intent or motivation for the assaultive acts, whether the acts were uninterrupted, and whether there was an opportunity for the defendant to reconsider her acts. *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. No single "factor is dispositive, and the ultimate determination should depend on the totality of the circumstances, not a mechanical balancing of the various factors." *Villanueva-Gonzalez*, 180 Wn.2d at 985.

Here, the assaultive acts occurred over several hours and in different places in the victim's home. According to Tricomo, there were hours in between the act of slitting the victim's throat and cutting the victim's wrists. Further, Tricomo's account of the events indicate that her motivation for the two attacks was different. Tricomo stated that she brought the knife with her into the upstairs bedroom "as preparation to kill" the victim, but that she cut the victim's wrists because the victim was attempting to take the knife from her. CP at 5. And, she had considerable time to reconsider her actions. For instance, she had time to reconsider during the "hours" the victim spent walking around the house after she slit his throat in the upstairs bedroom and before she cut his wrists during the struggle at the entryway. *See* CP at 5. Considering the totality of the circumstances, the assault that resulted in neck wounds was a separate course of conduct from the assault that resulted in wrist wounds. Therefore, Counts II and IV do not violate double jeopardy.

2.      Second Degree Murder and Second Degree Assault

Tricomo was charged with second degree murder under RCW 9A.32.050(1)(a), and three counts of second degree assault under RCW 9A.36.021(1)(a) and (c). Tricomo contends that the murder and assaults "arose from a single course of conduct and constitute the same offense." Br. of Appellant at 10. Tricomo misconstrues the double jeopardy analysis for multiple convictions under separate statutes.

To determine if a defendant's convictions under different statutes violate double jeopardy, we apply the same evidence test. *Calle*, 125 Wn.2d at 777; *Villanueva-Gonzalez*, 180 Wn.2d at 980-81. The same evidence analysis asks whether the convictions were the same in law and in fact. *Calle*, 125 Wn.2d at 777; *accord Villanueva-Gonzalez*, 180 Wn.2d at 980-81. "If there is an element in each offense which is not included in the other, and proof of one offense would not necessarily also prove the other, the offenses are not constitutionally the same and the double jeopardy clause does not prevent convictions for both offenses." *Calle*, 125 Wn.2d at 777 (quoting *State v. Vladovic*, 99 Wn.2d 413, 423, 662 P.2d 853 (1983)).

Tricomo was charged with second degree murder under RCW 9A.32.050(1)(a), one count of second degree assault under RCW 9A.36.021(1)(a), and two counts of second degree assault under RCW 9A.36.021(1)(c). A person commits second degree assault under RCW 9A.36.021 when:

> (1)   . . . he or she, under circumstances not amounting to assault in the first degree:
>        (a)  Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or
>        . . . .
>        (c)  Assaults another with a deadly weapon.

Because assault is not defined in the criminal code, courts have turned to the common law for its definition. *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009); *State v. Kier*, 164 Wn.2d 798, 806, 194 P.3d 212 (2008). Three definitions of assault are recognized in Washington: (1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm. *Elmi*, 166 Wn.2d at 215.

A person commits second degree murder under RCW 9A.32.050(1)(a) when:

> With intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person.

Tricomo's convictions for second degree murder and second degree assault are legally different. Proof of second degree assault does not necessarily prove second degree murder because a person can assault another person without actually causing death. Second degree murder, on the other hand, requires proof of intent to cause death, and actual death. Therefore, the convictions are not the same in law.

Also, Tricomo's convictions for second degree assault and second degree murder are factually different. As discussed above, Tricomo's assault convictions arise from her acts of assaulting the victim with a razor knife. But Tricomo's second degree murder conviction arises from her strangling the victim with an electrical extension cord.

Thus, Tricomo's murder and assault convictions are not the same in law and in fact. While it is true that the convictions are based on Tricomo's actions from a particular day, they are based on different laws and actions. Tricomo's double jeopardy challenge fails.

B.    CONSEQUENCES OF GUILTY PLEA

Tricomo argues that she should be able to withdraw her guilty plea because she was misinformed about the maximum sentence in her guilty plea. We disagree.

Due process requires that a defendant's guilty plea be made knowingly, voluntarily, and intelligently. *State v. Kennar*, 135 Wn. App. 68, 72, 143 P.3d 326 (2006). CrR 4.2 precludes a trial court from accepting a guilty plea without first determining that the defendant is entering the plea voluntarily, competently, and with an understanding of the nature of the charge and the consequences of the plea. *Kennar*, 135 Wn. App. at 72.

Here, Tricomo pleaded guilty to second degree murder. At the plea hearing, the trial court informed her that the applicable maximum term of confinement was a life sentence and the "standard range of actual confinement was 257 to 357 months," with the State recommending a sentence of 357 months. VRP (Nov. 6, 2014) at 7. Tricomo acknowledged that she understood. The court then sentenced Tricomo within the standard range.

Tricomo contends that her plea was not made knowingly, voluntarily, and intelligently because the trial court misinformed her of the applicable maximum sentence for the offense with which she was charged. Tricomo asserts that the applicable maximum sentence was the top end of the standard range, not the statutory maximum sentence declared by the legislature. Citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), Tricomo claims that the trial court misinformed her when it told her that life imprisonment was the applicable maximum sentence for second degree murder.

*Kennar* rejected Tricomo's precise argument. *Kennar*, 135 Wn. App. at 72. In *Kennar*, the court held that "CrR 4.2 requires the trial court to inform a defendant of both the applicable

standard sentence range and the maximum sentence for the charged offense as determined by the legislature." *Kennar*, 135 Wn. App. at 75. The *Kennar* court, noting that *Blakely* is a sentencing case, not a plea-entry case, held:

> Because a defendant's offender score and standard sentence range are not finally determined by the court until the time of sentencing, the Sixth Amendment concerns addressed in *Blakely* do not apply until that time. Thus, when Kennar entered his guilty plea, the maximum peril he faced was, in fact, life in prison. He was correctly informed of this by the trial court. His plea was knowingly, intelligently, and voluntarily entered. There was no error.

*Kennar*, 135 Wn. App. at 76.

Similarly here, at the time of her plea, Tricomo was informed of the maximum sentence and the standard sentence range for the charged offense. *Kennar* controls, and Tricomo's plea was entered knowingly, intelligently, and voluntarily.

C. EVIDENCE AT SENTENCING

Tricomo argues that the trial court erred in refusing to consider relevant evidence at sentencing. We disagree.

"As a general rule, the length of a criminal sentence imposed by a superior court is not subject to appellate review," as long as the sentence is within the standard range.[4] *State v. Williams*, 149 Wn.2d 143, 146, 65 P.3d 1214 (2003). Tricomo was sentenced within the standard range. However, even if we consider whether the trial court erred in not considering Tricomo's evidence, her argument fails.

---

[4] We may review the sentence where a defendant requests an exceptional sentence below the standard range if the court abused its discretion by either refusing to exercise its discretion or relied on an impermissible basis for refusing to impose an exceptional sentence. *State v. Khanteechit*, 101 Wn. App. 137, 138, 5 P.3d 727 (2000). Here, however, Tricomo did not request an exceptional sentence below the standard range and was sentenced within the standard range.

In Tricomo's sentencing brief, Tricomo asked the court to consider evidence regarding her background, urging the court to sentence her at the low end of the standard range. Tricomo argues that "the court refused to consider any opinion as to the appropriate sentence." Br. of Appellant at 18. Tricomo fails to provide any authority suggesting that the sentencing court is required to consider an expert's opinion about "the appropriate sentence" where the defendant does not request an exceptional sentence. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Thus, Tricomo's argument fails.

Tricomo next argues that the trial court erred by not considering the experts' opinions about the effects of Tricomo's medications. The trial court ruled that it would disregard the expert's discussion of medication, because "I don't find that [the expert] has any expertise in that particular area and she basically only sets forth a number of articles suggesting that they may have some relevance." VRP (Jan. 28, 2015) at 39. Tricomo fails to provide any argument as to how the trial court erred. Therefore, we do not consider this argument. RAP 10.3; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Finally, Tricomo argues that she should have been able to present more evidence about her culpability for the crimes because the sentencing court should be concerned with whether the punishment is proportional to the culpability. Culpability is determined by the charge and conviction. *See State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 15 (2014). And the legislature, in determining the sentencing range, accounts for culpability and dangerousness. *State v. Jordan*, 180 Wn.2d 456, 460, 325 P.3d 181 (2014). Tricomo provides no authority suggesting that during

No. 47238-4-II

sentencing, where the defendant does not request an exceptional sentence below the standard range based on mitigating circumstances, the trial court should readdress and reestablish a defendant's culpability for an offense that the defendant has pleaded guilty to. Again, Tricomo's argument fails. *See DeHeer*, 60 Wn.2d at 126.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Bjorgen, C.J.

12