# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON,<br><br>               Respondent,<br><br>    v.<br><br>JAMES EDWARD ELLIOTT,<br><br>               Appellant. | No. 77781-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: August 5, 2019 |

APPELWICK, C.J. — James Elliott contends that his guilty plea was not entered knowingly, voluntarily, and intelligently. He argues that the trial court misinformed him of the applicable maximum sentence and neglected to inform him of the employment consequences that would follow from his guilty plea. We conclude that Elliot was properly advised at sentencing and that Elliott knowingly, intelligently, and voluntarily entered the plea. We affirm.

## FACTS

In March 2017, the State charged James Elliott with first degree burglary - domestic violence. On November 3, 2017, Elliott pleaded guilty to amended charges of residential burglary - domestic violence (count one) and third degree malicious mischief - domestic violence (count two). During the plea colloquy, the State informed Elliott that the maximum sentence he could receive for the burglary charge was 10 years and a $20,000 fine. The trial court adopted the agreed

recommendation of the parties and imposed a standard range sentence totaling eight months in jail, which Elliott had already served. Elliott appeals.

DISCUSSION

Elliott contends that, because the court misinformed him of the consequences of his plea, he is entitled to withdraw the plea. He argues that the trial court misinformed him of the possible maximum sentence that the court could impose. And, he argues that the trial court did not inform him of the employment consequences that would follow his guilty plea.

I. Due Process

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. State v. Robinson, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011). A defendant does not knowingly plead guilty when he bases that plea on misinformation regarding sentencing consequences. Id. at 790. The court shall allow a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. Id. at 790-91; CrR 4.2(f). And, a defendant may withdraw his guilty plea when he was not informed of a "direct consequence" of the plea. State v. Mendoza, 157 Wn.2d 582, 588, 141 P.3d 49 (2006).

A sentencing consequence is direct when "'the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment.'" Id. (quoting State v. Ross, 129 Wn.2d 279, 284, 916 P.2d 405 (1996)). A defendant must be informed of the statutory maximum for a charged

crime, as this is a direct consequence of his guilty plea. State v. Weyrich, 163 Wn.2d 554, 557, 182 P.3d 965 (2008). The defendant need not establish a causal link between the misinformation and his decision to plead guilty. Id.

The State bears the burden of proving the validity of a guilty plea. Ross, 129 Wn.2d at 287. Knowledge of the direct consequences of a guilty plea may be satisfied from the record of the plea hearing or clear and convincing extrinsic evidence. Id. An allegation that a guilty plea was not knowingly made because it was based on misinformation of sentencing consequences is a constitutional error that a defendant can raise for the first time on appeal. State v. Kennar, 135 Wn. App. 68, 72-73, 143 P.3d 326 (2006); State v. Knotek, 136 Wn. App. 412, 422-23, 149 P.3d 676 (2006).

## II. Maximum Sentence

Elliott contends first that the trial court misinformed him of the maximum term for his burglary charge.

The United States Supreme Court has held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, besides the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000); In re Pers. Restraint of Beito, 167 Wn.2d 497, 504, 220 P.3d 489 (2009). The "'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely v. Washington, 542 U.S. 296, 303, 124 S. Ct.

No. 77781-5-I/4

2531, 159 L. Ed. 2d 403 (2004) (emphasis omitted) (quoting Apprendi, 530 U.S. at 483).

Residential burglary is a class B felony. RCW 9A.52.025. The maximum penalty for a class B felony is 10 years in prison and a $20,000 fine. RCW 9A.20.021(1)(b).

Elliott argues that the standard range he faced was 3 to 9 months, and that, when the State does not seek an exceptional sentence, the court has authority to impose a sentence above the standard range only under the parameters of RCW 9.94A.535. Citing Knotek, Elliott contends that no aggravating facts are present or alleged here, and therefore the "maximum term" of 10 years of which the court advised him was erroneous.

In Knotek, the defendant pleaded guilty before Blakely and was sentenced after Blakely. 136 Wn. App. at 420-21. Blakely eliminated the possibility of exceptional life sentences that the trial court had discussed with Knotek before accepting her plea. Id. at 425. On appeal, Knotek argued that she was misinformed about the maximum terms of confinement for the homicide charges to which she pleaded guilty when the trial court told her that she faced the possibility of an exceptional sentence above the standard sentencing range. Id. at 424. Rejecting her argument, the court held,

> The record clearly shows that, regardless of Knotek's currently claimed understanding of the sentencing consequences when she entered her pre-Blakely plea, before the trial court sentenced her post-Blakely, she clearly understood that Blakely had eliminated the possibility of exceptional life sentences and, thus, had

4

No. 77781-5-I/5

> substantially lowered the maximum sentences that the trial court could impose.

Id. at 425-26.

The State contends that Elliott's argument "directly conflicts with our [S]upreme [C]ourt's categorical edict in Weyrich." In Weyrich, the defendant entered a guilty plea to three counts of first degree theft and an unlawful check issuance charge. 163 Wn.2d at 556. Two separate statements of defendant on plea of guilty advised Weyrich that the maximum sentence for each crime, respectively, was 5 years. Id. His judgment and sentence also stated that the maximum sentence was 5 years for each crime. Id. In fact, the maximum sentence for unlawful check issuance is 5 years, but the maximum sentence for theft in the first degree is 10 years. Id.; RCW 9A.20.021(1)(b); RCW 9A.56.030(2). Despite the error, Weyrich was sentenced on both crimes within the correct standard range. Id. Prior to sentencing, Weyrich moved to withdraw his pleas, which he argued were not knowingly, voluntarily, and intelligently made. Id. The trial court denied the motion and this court affirmed. Id. The State Supreme Court reversed, holding that, because Weyrich was misinformed that the statutory maximum sentence for the first degree thefts was 5 years, he should have been allowed to withdraw his pleas. Id. at 557.

This court addressed essentially an identical argument to Elliott's in Kennar. Kennar contended that his plea was not made knowingly, voluntarily, and intelligently, because the trial court "misinformed him of the applicable maximum sentence for the offense with which he was charged." 135 Wn. App. at 71. Kennar

5

asserted that the applicable maximum sentence was the top end of the standard range, not the statutory maximum sentence declared by the legislature. Id. He argued that the trial court should have informed him of only the applicable standard sentence range. Id. at 74.

This court disagreed. Id. at 76. We stated,

> First, the guilty plea form approved by the Supreme Court and contained in CrR 4.2(g) requires that both the applicable standard sentence range and the statutory maximum sentence established by the legislature be set forth. This is a clear indication that the drafters of CrR 4.2 did not believe these to be one and the same.

Id. at 74. This court stated that "a defendant should be informed of both the applicable standard sentence range and the statutory maximum sentence established by the legislature for the charged offense." Id. (citing State v. Gore, 143 Wn.2d 288, 21 P.3d 262 (2001), overruled on other grounds by State v. Hughes, 154 Wn.2d 118, 110 P.3d 192 (2005), abrogated by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006) (the subsequent history has no effect on the usage of Gore)). We went on to explain,

> It is not until the sentencing hearing that the trial court makes its determination of a defendant's offender score and the applicable standard sentence range. At the time of the plea colloquy, the trial court is merely operating on the basis of the information given to it by the parties—it is not at that time making a determination that this information is correct.

Id. at 75. Rejecting Kennar's argument, this court concluded that the procedure he advocated for would result in defendants "being misadvised of their maximum peril." Id. at 76.

As in Kennar, Elliott signed the statement of defendant on plea of guilty prepared by his attorney and required by CrR 4.2(g), thereby acknowledging that he knew the nature of the crime charged, the maximum sentence, and the consequences of entering the plea, including the court's authority to impose any sentence within the designated standard range. Id. at 70. Elliott was advised in writing that he was not facing an exceptional sentence outside the standard range. During his plea colloquy with the trial court, Elliott stated that he understood that the maximum term for residential burglary is 10 years imprisonment and a $20,000 fine. He also acknowledged that the range he was "facing" was the standard range of 3 to 9 months.

We adhere to our decision in Kennar and find that, when Elliott entered his guilty plea, he was correctly informed of the maximum term and the standard range.

### III.    Employment Consequences

Elliott argues next that he did not knowingly, intelligently, and voluntarily plead guilty because the trial court neglected to inform him of the employment consequences that would follow from his guilty plea.

A defendant must be informed of all the direct consequences of his plea prior to acceptance of a guilty plea. State v. A.N.J., 168 Wn.2d 91, 113-14, 225 P.3d 956 (2010). While a defendant cannot be positively misinformed about the collateral consequences, those collateral consequences can be undisclosed without rendering the plea involuntary. Id. at 114. The distinction between direct

and collateral consequences of a plea turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment. Id.

Citing Brady v. United States, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), Elliott contends, "[I]t appears the 'direct' versus 'collateral' consequence distinction is dwindling; accordingly, this [c]ourt should find that courts must inform a defendant of the employment consequences that will follow upon a plea of guilty for multiple reasons." And, he asserts that "[b]ecause a person's ability to earn a living is central to his ability to function in society," this court should hold that courts must advise defendants of the employment consequences that will follow a guilty plea.

Elliot observes that several Washington statutes ban people with felony convictions from working in certain professions. He also asserts that a felony conviction presents numerous hurdles for countless jobs. The only legal authority Elliott cites for the proposition that courts should inform a defendant of the employment difficulties he or she will face after a guilty plea is the dissent in State v. Heitzman, 107 N.J. 603, 608, 527 A.2d 439 (1987) (Wilentz, C.J., dissenting). We acknowledge that a felony conviction creates difficulties for obtaining employment. However, no authority has held that diminished employment opportunities are a direct consequence of a plea, and we decline to do so here. Thus, the trial court was not required to advise Elliott on those consequences.

No. 77781-5-I/9

Elliott's plea was knowingly, intelligently, and voluntarily entered.

We affirm.

WE CONCUR:

Appelwick, C.J.

Dwyer, J.