IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53938-1-II |
| Respondent, | (Consolidated with 53948-9-II) |
| v. | |
| KELSEY TYRELL PHILLIPS, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, A.C.J. — Kelsey Tyrell Phillips appeals the denial of his motion to withdraw his guilty pleas to two separate sets of charges.  He argues that (1) his guilty pleas were not knowing, intelligent, and voluntary because he was misadvised about the maximum penalties for his offenses, and (2) the trial court abused its discretion in denying his pre-sentence motion to withdraw his guilty pleas based on ineffective assistance of counsel.  Because Phillips was properly advised of the statutory sentencing maximum for his offenses and the trial court did not abuse its discretion when it concluded that Phillips's counsel's representation was not deficient, we affirm.

FACTS

I.  CRIMES AND ORIGINAL CHARGES

On December 8, 2016, Juan and Edgardo Arroyo were at a gas station when they observed a station wagon pursuing a red sedan through the parking lot.  The Arroyos followed the vehicles. When they saw the station wagon blocking the red sedan from leaving a parking lot, Edgardo

Arroyo got out of his vehicle and asked if everything was alright. The driver of the station wagon got out of the vehicle, shot Edgardo Arroyo, and fled the scene in the station wagon.

Officers later located the station wagon and detained Shamille Bullard. According to the statement of probable cause, Bullard initially "denied knowing anything about the shooting." Clerk's Papers (CP) at 95. But he later asserted that he knew who had done the shooting despite maintaining that he (Bullard) was not present during the shooting. Finally, Bullard admitted that he, Phillips, and Demetrius Crawford had been in the station wagon and stated that Phillips shot Edgardo Arroyo.

On January 8, 2017, Bullard, Crawford, Phillips, and Tatiana Isaacs-Jackson were involved in a retaliatory shooting incident that occurred at an apartment complex. The four were in a car, and at least one of them shot into another vehicle containing four people. According to the statement of probable cause, after his arrest Bullard initially denied being present at the time of the shooting, but he later admitted he was there and implicated Crawford and Phillips as the shooters.

On January 25, the State charged Phillips with drive-by shooting and four counts of first degree assault based on the January 8, 2017 incident (the retaliatory shooting charges).[1] Sunni Ko was appointed as Phillips's counsel.

---

[1] Pierce County Superior Court cause number 17-1-00338-9.

On March 10, the State charged Phillips with attempted second degree murder, first degree assault, and drive-by shooting based on the December 8, 2016 incident (the Arroyo shooting charges).[2] Phillips retained Ko as counsel in this case. Just over a year later, at the State's request, the trial court dismissed the Arroyo shooting charges without prejudice to allow for additional investigation.

## II. GUILTY PLEAS

### A. PLEAS TO RETALIATORY SHOOTING CHARGES

On April 3, 2018, the State amended the retaliatory shooting charges, and Phillips pled guilty to first degree assault with a deadly weapon sentencing enhancement and two counts of second degree assault, one with a deadly weapon sentencing enhancement.[3] The plea statement advised Phillips of the standard sentencing ranges and statutory maximums for each offense. The plea statement also advised Phillips of the limited circumstances under which the trial court could impose an exceptional sentence outside the standard range should the court decide not to follow the parties' sentencing recommendation. Phillips signed the plea statement, which included a statement asserting that Ko had "discussed" the plea statement with him and that he understood it. CP at 18.

During the plea colloquy, the trial court confirmed that Phillips had reviewed the plea documents with his counsel, that his counsel had answered all of his questions about the plea, and

---

[2] Pierce County Superior Court cause number 17-1-00980-8.

[3] In the same plea statement, Phillips also pled guilty to separate, unrelated charge of second degree retail theft. Phillips does not raise any issues related to that part of the plea.

that he understood the plea statement. The trial court then advised Phillips of the standard ranges and statutory maximums for each offense and of the length of the enhancements. When the court asked him if he "underst[oo]d the sentences," Phillips responded that he did. Verbatim Report of Proceedings (VRP) (Apr. 3, 2018) at 9. Phillips also confirmed that he understood that the court did not have to follow the sentencing recommendation. The court then reviewed the sentencing recommendation with Phillips and asked Phillips if he had any questions about the recommendation; Phillips did not have any questions.

The court next reviewed Phillips's plea statement, and Phillips agreed that it was "a true and correct statement of what [he] did that [made him] guilty of the three crimes" charged under that cause number. VRP (Apr. 3, 2018) at 15. The court found a factual basis for the pleas, verified that no one was forcing or threatening Phillips into entering the pleas, and accepted the guilty pleas.

B. PLEA TO THE ARROYO SHOOTING CHARGE

More than a month after Phillips pled guilty to the retaliatory shooting charges, but before Phillips had been sentenced for those convictions, the State filed an amended information for the Arroyo shooting incident charging Phillips with one count of first degree assault.[4] Phillips pled guilty to the amended charge.

The plea statement for the Arroyo shooting charge advised Phillips of the standard sentencing range and statutory maximum for the first degree assault charge. The plea statement

---

[4] The State refiled the charge after further investigation, during which it found additional evidence based on Phillips's social media postings on Facebook.

also advised Phillips that the standard range was based on the assumption that he would be sentenced for the retaliatory shooting convictions and the Arroyo shooting convictions at the same time. It further stated that Phillips understood that this new charge would increase his offender scores and standard ranges with respect to the charges to which he had already pled. Additionally, as in the plea statement for the retaliatory shooting, the plea statement advised Phillips of the limited circumstances under which the trial court could impose an exceptional sentence outside the standard range.

During the plea colloquy, the trial court confirmed that Phillips had reviewed the plea documents with his counsel, that his counsel had answered all of his questions about the plea, and that he understood the plea statement. The trial court then verified that Phillips understood the charge, the maximum sentence, the standard range, and that the trial court was not required to follow the sentencing recommendation.

The court next reviewed the plea statement, and Phillips agreed that this was a true and correct statement of what he had done that made him guilty. Phillips stated that he was making his plea freely and voluntarily, that he had not been forced or threatened or promised anything in return for the plea. The court accepted the guilty plea, finding that there was a factual basis for the plea, that the plea was "being made freely and voluntarily," and that Phillips understood his rights and the consequences of the plea. VRP (May 21, 2018) at 34.

### III. MOTIONS TO WITHDRAW GUILTY PLEAS

Before sentencing, Phillips moved to withdraw his guilty pleas to both sets of charges based on alleged ineffective assistance of counsel.[5] Phillips claimed that Ko had pressured him into pleading guilty and agreeing to the factual statements in the plea statements and that Ko had failed to inform him of "exculpatory statements" that she was aware of before he entered his pleas.[6] CP at 24, 118.

In his motions and supporting declarations, Phillips asserted that after he had entered his guilty pleas, he learned for the first time that some of the co-defendants, victims, and witnesses had made contradictory or potentially exculpatory statements about his (Phillips's) involvement in both incidents. He claimed that he obtained this new information from his mother after he had entered his pleas. Phillips asserted that had he known about these statements and had he not been pressured by Ko to accept the factual statements she had drafted, he would not have pled guilty.

At the hearing on the motion, Phillips testified that he wanted to withdraw his pleas because he had learned about statements "by victims," co-defendants, and witnesses regarding "what exactly they said about the case and what actually happened." VRP (June 18, 2019) at 8-9. Phillips admitted to having reviewed the probable cause declarations before entering his pleas, but he asserted that he did not see the complete statements from the police reports until after he entered his guilty pleas and that he got this additional information from his mother. Phillips also stated

---

[5] Phillips did not move to withdraw his plea to the second degree retail theft.

[6] Phillips did not assert that he had been misadvised about the sentencing consequences.

6

that he would not have chosen to plead guilty had he known about the statements he discovered after entering his pleas.

Phillips testified that he learned from police statements or from transcripts from the State's or Ko's interviews that there were some potentially exculpatory statements by the victims in both cases and other witnesses in both cases suggesting that he was not the shooter in both cases. But he admitted that some of these statements were in the statements of probable cause that accompanied the informations, and he was not clear about which interview transcripts he was referring to.[7]

Ko, who had withdrawn as Phillips's counsel when he chose to move to withdraw his pleas, also testified at the motion hearing. She testified that when she was representing Phillips, she felt that he had more trust in his mother, so she (Ko) communicated with his mother by email and copied Phillips on these email communications. Ko stated that she shared the same information with both Phillips and his mother to ensure that they "were all on the same page about what was happening." VRP (June 18, 2019) at 95.

Ko testified that she had received "full sets of discovery in each of [the] cases" and that she had reviewed this discovery and provided Phillips with a "discovery summary" because obtaining the redacted discovery that she could provide to Phillips could take up to a year. VRP (June 18, 2019) at 96-97. Ko shared the discovery summaries for both cases with Phillips and with his mother as she received the discovery, and she reviewed this information with Phillips. Ko also

---

[7] It is possible that the exhibits Phillips provided at the motion hearing could have clarified which interviews he was referring to, but these exhibits are not part of the appellate record.

testified that before Phillips entered his guilty pleas, she shared and discussed all transcripts from defense interviews of the victims and other witnesses, as well as other evidence that might have been favorable with Phillips and his mother. She stated that this evidence included the information that Phillips was now asserting was new information. In particular, she testified that she explained to him that his Facebook postings were the "death knell" in the attempted murder charges despite the contradictory statements by witnesses which he learned before his plea to that charge. VRP (June 18, 2019) at 122.

The trial court denied Phillips's motion to withdraw his guilty pleas and entered the following written findings of fact and conclusions of law:

FINDINGS OF FACT

. . . .

IV.

Over the course of Ms. Ko's representation of the defendant [in both cases], she created summaries of all discovery for the two cases. She provided these summaries to the defendant and also provided him copies of all transcribed interviews. She also provided him with excerpts of all relevant Facebook postings. In addition, she provided letters to the defendant summarizing the discovery and the strengths and weaknesses of each case. Ms. Ko also repeatedly met with the defendant to go over the evidence and to assess his various options in each case.

. . . .

IX.

Ms. Ko testified at the hearing on the defendant's motion to withdraw his guilty pleas and the court finds her testimony credible.

X.

The defendant testified at the hearing on his motion to withdraw his guilty pleas and the court finds his testimony not credible.

XI.

The defendant testified to various items of discovery he claimed Ms. Ko had not made him aware of before entering his guilty pleas for [the Arroyo shooting and the retaliatory shooting]. These claims are not credible. Ms. Ko provided all of this information before the defendant entered his guilty pleas.

XII.

The defendant's desire to withdraw his guilty pleas is simply "buyer's remorse." He entered his guilty pleas believing doing so was in his best interests. He made those decisions after Ms. Ko fully provided effective assistance of counsel. Only after entering those guilty pleas did the defendant come to regret those decisions and wish to proceed to trial on the matters.

CONCLUSIONS OF LAW

I.

The court denies the defendant's motion to withdraw his guilty plea for [the retaliatory shooting charges] that was entered on April 3, 2018 and his guilty plea for [the Arroyo shooting charges] that was entered on May 21, 2018.

II.

The defendant has not established that he received ineffective assistance of counsel from Ms. Ko. Ms. Ko's representation did not fall below an objective standard of reasonableness. Further, the defendant has not credibly established that Ms. Ko's alleged deficiencies prejudiced him, i.e., even if the defendant's accusations are true, there is not a reasonable probability that he would not have entered the guilty pleas.

III.

Because the defendant has not established that he received ineffective assistance of counsel in making the decision to enter his guilty pleas, he has not established a manifest injustice that would make it appropriate to permit the withdrawal of his guilty pleas under CrR 4.2.

CP at 47-52.

9

Phillips appeals his convictions and the order denying his motion to withdraw his guilty pleas.

## ANALYSIS

### I. NOT MISADVISED OF SENTENCING CONSEQUENCES

Phillips argues, for the first time on appeal, that his guilty pleas were not knowing, voluntary, and intelligent because he was misinformed about the consequences of his guilty pleas. Even presuming, but not deciding, that we can reach this issue despite Phillips's failure to raise it in the trial court,[8] this argument fails.

Due process requires that a guilty plea be entered knowingly, voluntarily, and intelligently. *State v. Robinson*, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011). Under CrR 4.2(d), a trial court cannot accept a guilty plea without first determining that the plea was made "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." *See also Robinson*, 172 Wn.2d at 791-92. The relevant statutory maximum sentence is a direct consequence of a guilty plea, and failure to properly advise the defendant of the maximum sentence can invalidate the plea. *State v. Weyrich*, 163 Wn.2d 554, 557, 182 P.3d 965 (2008) ("A defendant must be informed of the statutory maximum for a charged crime, as this is a direct consequence of his guilty plea.").

Citing *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *State v. Knotek*, 136 Wn. App. 412, 149 P.3d 676 (2006), Phillips claims that he was misinformed of the potential sentencing consequences when he was advised of the statutory

---

[8] *See* RAP 2.5(a).

maximum sentences because he would not be exposed to any sentence beyond the top-end of the standard sentencing ranges.

*Blakely* limits the circumstances under which a trial court can impose a sentence above the standard range. *State v. Stubbs*, 170 Wn.2d 117, 123 n.5, 240 P.3d 143 (2010). And in *Knotek* we held that the direct consequences of the plea included the actual maximum sentence to which the defendant could be sentenced to under the plea agreement, "not the maximum potential sentence if she went to trial." *Knotek*, 136 Wn. App. at 424 n.8. But *Weyrich*, which our Supreme Court issued after *Blakely* and *Knotek*, establishes that the statutory maximum for an offense *is* a direct consequence of a guilty plea and that a defendant must be accurately advised of the statutory maximum for a guilty plea to be knowing, intelligent, and voluntary. 163 Wn.2d at 557. Thus, our conclusion in *Knotek* that the statutory maximum is not a direct sentencing consequence is not an accurate statement of the law, and the inclusion of the statutory maximums in the plea agreements did not misinform Phillips of the potential sentencing consequences.

Additionally, Phillips's argument was rejected in *State v. Kennar*, 135 Wn. App. 68, 72, 143 P.3d 326 (2006), and, in light of *Weyrich*, *Kennar* is persuasive. In *Kennar*, Division One of this court held that "CrR 4.2 requires the trial court to inform a defendant of both the applicable standard sentence range *and the maximum sentence* for the charged offense as determined by the legislature." *Kennar*, 135 Wn. App. at 75 (emphasis added). The court, noting that *Blakely* is a sentencing case and did not address guilty pleas, held:

> Because a defendant's offender score and standard sentence range are not finally determined by the court until the time of sentencing, the Sixth Amendment concerns addressed in *Blakely* do not apply until that time. Thus, when Kennar entered his guilty plea, the maximum peril he faced was, in fact, life in prison. He

11

was correctly informed of this by the trial court. His plea was knowingly, intelligently, and voluntarily entered. There was no error.

*Kennar*, 135 Wn. App. at 76 (footnote omitted).

Consistent with *Kennar*, the plea statements here advised Phillips that his standard range sentences and the State's sentencing recommendations could increase if he were to be "convicted of any new crimes before sentencing, or if any additional criminal history is discovered." CP at 11, 103. And Phillips agreed that he could not "change [his] mind if additional criminal history is discovered even though the standard sentencing range[s] and the prosecuting attorney's recommendation[s] increase or a mandatory sentence of life imprisonment without the possibility of parole is required by law." CP 11, 103. Because any additional convictions could potentially increase the sentencing consequences, the statutory maximums for each offense were, as *Weyrich* confirms, relevant sentencing consequences even if the statutory maximum did not apply at the exact time Phillips entered his guilty pleas.

And, finally, Phillips's claim that the references to the statutory maximums in his plea statements could have caused him to believe that he could be subject to exceptional sentences of up to life imprisonment without the sentencing court having to comply with *Blakely* is not well taken. Both plea statements expressly advised Phillips of the circumstances under which the trial court could impose an exceptional sentence, including that proper notice, factual stipulations, or factual findings were required.

Accordingly, we hold that advising Philips of the statutory maximums for his offenses did not render his pleas involuntary. Thus, Phillips is not entitled to withdraw his guilty pleas on this ground.

No. 53938-1-II
(Consol. with 53948-9-II)

II. TRIAL COURT'S DENIAL OF PRE-SENTENCING MOTION TO WITHDRAW PLEAS

Phillips next challenges the trial court's denial of his motions to withdraw his guilty pleas based on his claim of ineffective assistance of counsel.[9] This argument also fails.

We review a trial court's decision on a motion to withdraw guilty pleas for an abuse of discretion. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). The trial court abuses its discretion when its decision "'is manifestly unreasonable or based upon untenable grounds or reasons.'" *Lamb*, 175 Wn.2d at 127 (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)).

Under CrR 4.2(f), "[t]he court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." A manifest injustice may arise where a defendant received ineffective assistance of counsel. *State v. McCollum*, 88 Wn. App. 977, 981, 947 P.2d 1235 (1997).

To prevail on his ineffective assistance claim, Phillips had to establish that Ko's performance was deficient and that this deficient representation prejudiced him. *State v. Grier*, 171 Wn.2d 17, 32–33, 246 P.3d 1260 (2011); *see also Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In the context of a claim of ineffective assistance of counsel at the plea bargaining stage, this test requires Phillips to show that Ko failed to actually and substantially assist him in deciding whether to plead guilty. *State v. Edwards*, 171 Wn. App.

---

[9] He assigns error to the trial court's denial of his motions to withdraw his guilty pleas and assigns error to the trial court's findings of fact IV, IX, X, XI, and XII, and to conclusion of law II. Although Phillips's argument does not discuss the alleged ineffective assistance of counsel claim in the context of the trial court's ruling, we address this issue as a challenge to the trial court's denial of the motion to withdraw the pleas because Phillips has assigned error to that order.

379, 394, 294 P.3d 708 (2012). Counsel's representation must include a discussion of the strengths and weaknesses of a defendant's case so that the defendant knows what to expect and can make an informed judgment whether or not to plead guilty. *Edwards*, 171 Wn. App. at 394.

Phillips argues that the trial court abused its discretion when it denied his motion to withdraw his guilty pleas because he demonstrated that Ko failed to advise him of multiple statements "tending to cast doubt on Mr. Phillips's involvement in either incident." Br. of Appellant at 13. Specifically, Phillips points to (1) Bullard's changing statements, and (2) the Arroyos' identification of the shooter as a light skinned male who had been driving the car. But the trial court found that Ko had provided Phillips with all of the information that he asserted he had not discovered until after he entered his guilty pleas. And Ko's testimony that she provided this information to Phillips before he entered his guilty pleas, which the trial court found credible, supports that finding.[10, 11] Furthermore, to the extent Phillips is challenging the trial court's finding that Ko's testimony was credible and that Phillips's testimony was not credible, we do not review the finder of fact's credibility determinations. *State v. A.X.K.*, 12 Wn. App. 2d 287, 298, 457 P.3d 1222 (2020). Accordingly, the trial court did not abuse its discretion in denying Phillips's motions to withdraw his guilty pleas.

---

[10] We also note that information regarding Bullard's changing statements related to both sets of charges was included in the probable cause statements, which Phillips admitted he was aware of before entering his pleas.

[11] Because we hold that the trial court properly determined that Ko's representation was not deficient, we do not address prejudice. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996) (if either part of the ineffective assistance of counsel test is not satisfied, we are not required to address the remaining part of the test).

No. 53938-1-II
(Consol. with 53948-9-II)

Because Phillips was properly advised of the statutory sentencing maximum for his offenses and the trial court did not abuse its discretion when it concluded that Phillips's counsel's representation was not deficient, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J.

GLASGOW, J.